39 A.3d 150

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. KEVIN JEROME HUDSON A/K/A KYWAN JUSTICE, KYWUN HUDSON, DEFENDANT–APPELLANT.

Argued September 12, 2011—Decided February 6, 2012.

Patterson, J., filed dissenting opinion in which Hoens, J., joined. Wefing, Judge (temporarily assigned), filed opinion concurring in part and dissenting in part.

516

*Robert L. Sloan,* Designated Counsel, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Sloan* and *Richard W. Berg,* Designated Counsel, on the briefs).

*Patricia B. Quelch,* Assistant Prosecutor, argued the cause for respondent (*Peter E. Warshaw, Jr.,* Monmouth County Prosecutor, attorney; *Ms. Quelch* and *Mary R. Juliano,* Assistant Prosecutor, on the briefs).

*Teresa A. Blair,* Deputy Attorney General, argued the cause on behalf of amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

In this appeal, and in its companion, *State v. McDonald,* 209 *N.J.* 78, 35 *A.*3d 669 (2012), separately conducted sentencing proceedings resulted in sentences that imposed, in their aggregate, multiple extended-term sentences. Previously, in *State v.*

*Papasavvas*[1] and *State v. Pennington,*[2] we addressed *N.J.S.A.* 2C:44–5(a)(1)'s prohibition against sentencing a defendant to multiple extended terms in a single sentencing proceeding. In this appeal, we address, for the first time, the import of *N.J.S.A.* 2C:44–5(b)(1)'s incorporation of subsection a's prohibitions to certain offenses and sentencing proceedings, when sentencing is conducted in separate proceedings. Subsection b pertains when "sentences of imprisonment [are] imposed at different times," and provides that "[w]hen a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence . . . (1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section."

In this matter defendant, Kevin Hudson, was sentenced to a second extended-term sentence for an offense committed prior to the imposition of the extended-term sentence he was serving. The imposition of that second extended-term sentence fit, in all respects, the temporal requirements for subsection (b)(1)'s application. We hold that imposition of the second extended-term sentence transgressed the direction in *N.J.S.A.* 2C:44–5(b)(1) to incorporate subsection a's prohibition against a defendant serving an aggregate sentence that accumulates multiple extended-term sentences. Subsection b's plain language applies subsection a's bar against imposing a sentence comprised of more than one extended term for the conviction of an offense which was committed prior to the imposition of the defendant's current extended-term sentence but for which defendant is being sentenced after the imposition of the first extended sentence.

We find unavailing the argument that the "so far as possible" qualifier in subsection (b)(1) waters down the specific prohibition to a mere preference to be considered in the general discretion of

---

[1] 163 *N.J.* 565, 751 *A.*2d 40 (2000).

[2] 154 *N.J.* 344, 712 *A.*2d 1133 (1998).

the sentencing court. Rather, based on the Legislature's express incorporation in subsection b of the prohibitions enumerated in subsection a and its direction that they be given effect "so far as possible," we conclude that those limitations must be given effect and their application excused only when it is not possible to apply subsection a's limitations and parameters. That circumstance is not present here.

Both of Hudson's extended-term sentences stemmed from the same original indictment. He was tried and sentenced in separate proceedings as a result of his having moved for severance of the charges against him because two victims were involved. The extended-term sentence challenged herein was imposed in the second of the two trials on an offense that preceded in time the imposition of the extended-term sentence he was serving at the time of his second trial. Under these facts, the imposition of the second extended term violated *N.J.S.A.* 2C:44-5(b)(1), rendering it illegal. We are constrained to reverse and remand for resentencing.

## I.

On June 12, 2006, Hudson was indicted in Monmouth County Indictment No. 06-07-1466 on twenty-three counts charging him with offenses associated with multiple assaults on two victims. He moved to sever the counts for trial because separate victims were involved. The severance motion was granted and, thereafter, he was subjected to two trials and sentencing proceedings.

The sentencing issue before us arose from the charges involving the victim, G.B. The trial that concerned the offenses involving the other victim, G.R., proceeded first. In the first trial, a jury found Hudson guilty of four third-degree offenses based on conduct that occurred on February 7, 2006. On one third-degree offense, the court sentenced defendant, on August 21, 2007, to an extended-term sentence of seven years imprisonment with a three-and-one-

half-year period of parole ineligibility.[3]   Defendant's sentences on the other offenses were made to run concurrently with the extended-term sentence.

Hudson then was tried for the offenses involving G.B., which concerned conduct that had occurred on October 12, 2005 and on February 8, 2006.   Although there were multiple charges, defendant was found guilty on two counts—second-degree aggravated assault (Count 13) and fourth-degree unlawful possession of a weapon (Count 15)—both of which arose from the February 8, 2006 incident.   The facts underlying those charges may be summarized briefly.

Hudson and G.B. became involved in a romantic relationship beginning in 2004.   There was a significant age difference between the two as Hudson was twenty-five years older than G.B., who was in her early twenties at the time of the assaults described herein. On the evening of October 12, 2005, allegedly because she had not been in touch with him, Hudson attacked G.B. as she walked to her home from a local train station.   After slashing her face with a scalpel-like device, he wrapped her wounds with gauze and left her at the scene of the attack.   When this incident initially was investigated by law enforcement authorities, G.B. gave a physical description of her attacker, but did not identify him as Hudson. She later attributed her reticence to fear, yet continued to see him, even after she learned that he was involved with another woman (the other victim, G.R.), with whom he had a child.

G.B.'s relationship with Hudson again turned violent when, in the early hours of February 8, 2006, he was waiting for her at the train station.   He made her walk with him to an apartment complex where he forced her to have sexual intercourse.   Afterward, G.B. unsuccessfully attempted to escape and defendant hit

---

[3] The record reflects that the trial judge who presided over the first trial and sentencing proceeding was about to be transferred from the Criminal Division. The judge therefore did not delay defendant's sentencing to await the outcome of the second and subsequent trial on the severed counts.

her in the eye. She thereafter remained with him throughout the evening, eventually entering another building and sleeping for awhile. Later, Hudson became enraged when, after searching G.B.'s belongings, he found she had been deleting messages on her cell phone. A vicious attack ensued in which he twice attempted to suffocate her with a plastic bag and, when that proved unsuccessful, he used an eyebrow archer's razor to trace over and reopen her facial scar where he had cut her before. He also inflicted cuts to her neck. Afterward, he did not prevent her from going home.

G.B. reported the February 8, 2006, as well as the earlier October 12, 2005, incidents to the police and identified Hudson as the assailant in each. Approximately two weeks later, when she found Hudson again waiting outside the train station when she emerged, she called 9–1–1. Police arrived and apprehended him.

Hudson was tried on the charges involving G.B. in January 2007. The jury found him guilty of third-degree aggravated assault (as a lesser-included offense of Count 13, second-degree aggravated assault) contrary to *N.J.S.A.* 2C:12–1(b)(7), and fourth-degree unlawful possession of a weapon (Count 15) contrary to *N.J.S.A.* 2C:39–5(d). Both counts related to the February 8, 2006, incident.

The State filed a motion seeking imposition of a discretionary extended term. Defense counsel conceded that Hudson was extended-term eligible based on his prior record; however, he argued that an extended term could not be imposed because Hudson had been sentenced to an extended term in the earlier trial that stemmed from the same indictment. According to the State, that did not free Hudson from eligibility for another extended-term sentence.

The court found that Hudson qualified as a persistent offender under *N.J.S.A.* 2C:44–3(a) based on his prior record,[4] and deter-

---

[4] The court considered Hudson's three prior New Jersey convictions dated March 16, 2001, and his New York convictions. Hudson's New York convictions

mined that the imposition of an extended-term sentence in Hudson's earlier proceedings did not preclude the imposition of a second extended-term sentence because the indictments had been severed. The court explained, "this is a second sentencing hearing and he's being sentenced for different crimes committed on different dates against different victims," and thus distinguished *Papasavvas, supra,* 163 *N.J.* 565, 751 *A.*2d 40, which prohibited the imposition, on the same day, of multiple extended terms on counts from the same indictment.

After considering the extended-term range, the court imposed a five-year term of imprisonment with a two-year period of parole ineligibility on the third-degree aggravated-sexual-assault charge (Count 13), which was made to run consecutively to the extended-term sentence Hudson already was serving. On the fourth-degree charge of unlawful possession of a weapon (Count 15), the court imposed an eighteen-month flat sentence, concurrent to the term on Count 13, but consecutive to the term Hudson was serving.[5] In sum, Hudson's aggregate sentence on the two consecutive extended terms, imposed as a result of his one indictment and two trials,

---

could be considered because New York law authorized a sentence of imprisonment in excess of six months for those offenses, which *N.J.S.A.* 2C:44–4 requires in order for an offense from another jurisdiction to be included in the persistent-offender analysis.

[5] The petition for certification granted in this matter does not include other sentencing issues raised by defendant. For completeness, we note that the court found aggravating factors three (risk defendant will commit another offense), six (extent of defendant's prior criminal record), and nine (need to deter defendant and others), *see N.J.S.A.* 2C:44–1(a), and no statutory mitigating factors, and further determined that the aggravating factors outweighed mitigating factors, *see N.J.S.A.* 2C:44–1(b). The court found that the instant offenses and the offenses underlying the prior sentence had independent objectives, involved separate acts or threats of violence against different victims, and were committed at different times in different places separated by a period of two weeks. Noting Hudson's extensive history of domestic violence, the court imposed consecutive sentences so as not to award Hudson a free crime against G.B. Hudson received gap-time credit toward the sentence.

was twelve years, with a five-and-one-half-year period of parole ineligibility.

The Appellate Division affirmed the sentence in an unpublished opinion. In addressing Hudson's arguments, the panel recognized that multiple extended terms may not be imposed in a single sentencing proceeding, but concluded that because Hudson sought severance and subjected himself to two separate sentencing proceedings, the bar in *N.J.S.A.* 2C:44–5(a)(2) that we addressed in *Papasavvas, supra,* 163 *N.J.* at 627, 751 *A.*2d 40, did not render defendant's sentence illegal. As the parties' arguments focused on the significance of defendant's original single indictment in respect of subsection a's application, the court's analysis did not touch on subsection b.

We granted defendant's petition for certification. *State v. Hudson,* 205 *N.J.* 80, 12 *A.*3d 212 (2011). Following a clarifying motion by the State, the grant of certification was honed to "whether it was an abuse of discretion to sentence defendant to an extended term consecutive to the extended term defendant was then serving." *State v. Hudson,* 208 *N.J.* 385, 31 *A.*3d 271 (2011). The Attorney General (AG) filed a motion for amicus curiae status, which we granted. Supplemental briefing has addressed the need to construe *N.J.S.A.* 2C:44–5(b)(1) when assessing the legality of defendant's sentence.

## II.

### A.

Hudson argues that had his indictment not been severed and the offenses tried in a single proceeding, only one extended term could have been imposed under *N.J.S.A.* 2C:44–5(a)(2). He claims that it is unfair to require a defendant to choose between the right to seek severance and the possibility of multiple extended terms. He adds that the imposition of multiple extended terms was particularly unfair in his case because the first trial judge, faced

with imminent reassignment to the Civil Division, proceeded to sentencing before the second trial took place.

Further, Hudson argues that *N.J.S.A.* 2C:44–5(b)(1) precludes the imposition of his second extended-term sentence and urges favorable review of the recent Appellate Division decision in *State v. Pennington,* 418 *N.J.Super.* 548, 14 *A.*3d 790 (2011). In that case, the court held, based on *N.J.S.A.* 2C:44–5(b)(1), that a second extended term cannot be imposed on an offense occurring before the imposition of the first extended term. It distinguished other seemingly contrary appellate decisions as involving offenses, for which the second extended-term sentence was imposed, that were committed *after* the imposition of the original extended-term sentence.[6] According to Hudson, the scheduling of sentencing proceedings and the date of the offense are the controlling features for determining the propriety of sentencing a defendant to more than one extended-term sentence under *N.J.S.A.* 2C:44–5(b)(1). In further support, he cites to the commentary to *Model Penal Code* § 7.06(2)(a) (*MPC*), which section is identical to *N.J.S.A.* 2C:44–5(b)(1). Hudson argues that the commentary is further evidence that the purpose of this sentencing subsection is to prevent the timing or number of trials (and sentencing proceedings) from enlarging a defendant's overall sentencing exposure when the offense for which he is being sentenced, in the second sentencing proceeding, was committed prior to imposition of the first sentence. *See MPC* § 7.06 explanatory note (stating that "the timing of trials or the number of trials for different offenses should not affect the limitations established by Subsection (1)").

### B.

The State's argument recognizes that pursuant to *N.J.S.A.* 2C:44–5(b), certain multiple terms of imprisonment, imposed at different times, "shall so far as possible conform to subsection a,"

---

[6] *See State v. Williams,* 299 *N.J.Super.* 264, 690 A.2d 1082 (App.Div.1997); *State v. Reldan,* 231 *N.J.Super.* 232, 555 A.2d 653 (App.Div.1989).

*N.J.S.A.* 2C:44–5(b)(1), and, further, that subsection (a)(2) of the statute requires, in part, that "not more than one sentence for an extended term shall be imposed." Its argument hinges on subsection (b)(1)'s requirement that the sentence "shall so far as possible conform" with subsection a. According to the State, the word "shall" is mandatory, but the word "possible" "indicates that conformity to subsection a. is . . . less than absolutely required in all situations."

Claiming that the qualifying words are ambiguous, the State draws support from its view of the *MPC* Commentary to § 7.06(2)(a). Although the State acknowledges that the commentary supports the argument that subsection (b)(1)'s overall goal is to place defendants convicted of multiple offenses generally in the same sentencing position regardless of whether the offenses are tried together or separately, that purpose does not extend to the proscription against multiple extended-term sentences. It is argued that that proscription is subject to the exercise of the court's discretion.[7]

In respect of Hudson specifically, the State argues that the fact that a discretionary extended term was granted should not control the sentence's legality; rather, the fundamental concern should be the real time that Hudson will serve. Because he received a five-year sentence for a third-degree crime, and because five years is the maximum period permitted for a third-degree crime, *see N.J.S.A.* 2C:43–6(a)(3), Hudson remained in the same position he would have been in had the indictment not been severed, which, the State argues, complies with the philosophy underlying *N.J.S.A.* 2C:44–5(b).

---

[7] In the companion case of *McDonald,* this argument is sharpened. There, the State contends that the "so far as possible" language was meant to repose with sentencing courts "some residuum of discretion," "vest[ing] the sentencing court with the authority not to follow *N.J.S.A.* 2C:44–5(a) where doing so would be 'unreasonable' or 'impracticable' because it would create disparity or an anomalous result and undermine legitimate sentencing goals." For the purposes of this opinion, we fold together all of the State's arguments in our consideration of the statutory construction question before us.

## C.

The AG's argument turns first to the bar in *N.J.S.A.* 2C:44–5(a)(2). She argues, similarly to the State, that its prohibition against the imposition of multiple extended terms is inapplicable when courts impose extended terms on different occasions. The AG points to earlier Appellate Division decisions that found no violation of *N.J.S.A.* 2C:44–5(a)(2) when multiple extended-term sentences were imposed in different cases involving the same defendant, and emphasizes that the Legislature has not acted to amend the statute to correct any misinterpretation of its intent since those cases were decided.

In Hudson's case, the AG asserts that the severed charges should be considered two trials and two convictions for purposes of eligibility for multiple extended-term sentences. The AG argues that the rules governing joinder of offenses in the same indictment do not speak to the issue of sentencing on those offenses if severed, and maintains that the State should not be bound by the initial determination to charge offenses together. Therefore, when a defendant's motion for severance is granted under *Rule* 3:15–2, the defendant should not be barred under *N.J.S.A.* 2C:44–5(a)(2) from the possibility of receiving more than one extended-term sentence as a result of the multiple proceedings.

In respect of *N.J.S.A.* 2C:44–5(b)(1), the AG argues that the qualifier, "so far as possible," evinces an intent to leave "a residuum of discretion" with trial judges when sentencing. The AG regards the language as, at most, "a presumption against a second extended term." To give the language a more inflexible reading would permit defendants to manipulate the order of sentencing to the end of requiring sentencing on lower-degree offenses to proceed first and thereby avoid an extended term on a later-sentenced higher-degree offense. As the AG puts it, the State would be required to gamble on a second trial's outcome: "where a defendant is tried years apart on the severed counts, the State would not know whether to seek an extended term following conviction on the first trial, where a defendant's sentencing expo-

sure is minimal, or risk waiting for the second trial" that could result in an acquittal. A deserving defendant could then escape imposition of any extended term.[8]

## III.

### A.

The New Jersey Code of Criminal Justice (Code) makes available ordinary length sentences, *see N.J.S.A.* 2C:43–6(a) (establishing ordinary sentencing ranges), as well as various extended-term sentencing options, *see generally State v. Pierce,* 188 *N.J.* 155, 161, 902 *A.*2d 1195 (2006) (listing examples of extended-term sentencing provisions). Extended-term sentences impose greater punishment, most often on the basis of an offender's past record of criminality. *See ibid; State v. Dunbar,* 108 *N.J.* 80, 87–88, 527 *A.*2d 1346 (1987). Although the Code makes some extended-term sentencing mandatory, *see, e.g., N.J.S.A.* 2C:43–6(f), other provisions confer a sentencing court with the discretion to impose an extended-term sentence when specified prerequisites are met. *See Pierce, supra,* 188 *N.J.* at 161, 902 *A.*2d 1195.

Pursuant to the persistent offender statute, a court "may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment" if the individual is found to be a persistent offender. *N.J.S.A.* 2C:44–3. A "persistent offender" is

a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.

---

8 As the alternative to its interpretation, the AG posits an extreme reading of the statute under which a defendant who receives an extended-term sentence could not be sentenced to another extended term for the duration of his or her criminal career.

[*N.J.S.A.* 2C:44–3 (a).]

The sentencing court must assess the defendant's prior convictions to determine whether the defendant meets those requirements. *See Pierce, supra*, 188 *N.J.* at 163, 168, 902 *A.*2d 1195. Once the court finds a defendant qualifies as a persistent offender, the permissible sentencing range expands; the maximum sentence of the higher-degree range becomes the top of the extended-term range, *id.* at 168, 902 *A.*2d 1195, while the bottom remains the minimum sentence of the ordinary-term sentencing range, *id.* at 169, 902 *A.*2d 1195. When fixing the appropriate sentence length for the defendant within that expanded range, the court may consider, in addition to finding and weighing aggravating and mitigating factors, the "protection of the public." *Id.* at 170, 902 *A.*2d 1195. Defendant was sentenced to a discretionary extended-term sentence pursuant to that statutory scheme. However, the issue in this appeal centers on *N.J.S.A.* 2C:44–5's application to defendant's sentencing and whether a defendant can be sentenced to multiple extended terms at separate sentencing proceedings.

## B.

■ *N.J.S.A.* 2C:44–5, entitled "Multiple Sentences; Concurrent and Consecutive Terms," guides sentencing in multiple-sentence circumstances. Many of its subparts address specific sentencing situations and instruct on whether a consecutive or concurrent sentence should be imposed and the manner of its calculation, *see N.J.S.A.* 2C:44–5(c), (e), (f), (h), or how a subsequent offense committed during suspension of a sentence or probation should affect such a previously imposed sentence, *see N.J.S.A.* 2C:44–5(g). Subsections a and b address the imposition of multiple sentences generally. They provide:

a. Sentences of imprisonment for more than one offense. When multiple sentences of imprisonment are imposed on a defendant for more than one offense, including an offense for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence, except that:

(1) The aggregate of consecutive terms to a county institution shall not exceed 18 months; and

(2) Not more than one sentence for an extended term shall be imposed.

There shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses.

b.   Sentences of imprisonment imposed at different times.   When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

(1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section; and

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the terms or terms remaining to be served; and

(3) When a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall not be deemed to run during the period of the new imprisonment unless the court determines otherwise at the time of sentencing.

[*N.J.S.A.* 2C:44-5(a), (b).]

■   In the context of reviewing whether a defendant's sentence complies with *N.J.S.A.* 2C:44-5's requirements, certain standards govern the performance of our task.   Appellate review of a sentence encompasses three distinct inquiries.   *See State v. Roth,* 95 *N.J.* 334, 363-66, 471 *A.*2d 370 (1984).   The first is paramount in this instance.   Appellate review at its most fundamental level requires the determination that the sentence imposed does not violate "legislative policies."   *Id.* at 364, 471 *A.*2d 370.   There must be compliance with statutory sentencing authority and stated parameters for a sentence to be lawful.   *Id.* at 365, 471 *A.*2d 370. Beyond that, appellate review includes an examination into whether the aggravating and mitigating factors found by the sentencing court "were based upon competent credible evidence in the record."   *Id.* at 364, 471 *A.*2d 370;   *see N.J.S.A.* 2C:44-7.   And further, appellate courts are empowered "[to] determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience."   *Roth, supra,* 95 *N.J.* at 364-65, 471 *A.*2d 370.

██ Generally, the abuse-of-discretion standard of review applies in appellate sentencing review, *see State v. Blackmon,* 202 *N.J.* 283, 297, 997 *A.*2d 194 (2010); *State v. Cassady,* 198 *N.J.* 165, 180, 966 *A.*2d 473 (2009), but questions of law are reviewed de novo, *see State v. Gandhi,* 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010) (noting that legal conclusions of trial or intermediate appellate court in sentencing context are reviewed de novo). Thus, the sentencing court's interpretation and application of *N.J.S.A.* 2C:44–5, in respect of whether multiple extended terms were permissible when imposed on defendant in separate proceedings at different times, raises an issue of law that we review de novo.

## C.

██ Well-known principles of statutory construction guide the analysis of *N.J.S.A.* 2C:44–5. The overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent. *See State v. Shelley,* 205 *N.J.* 320, 323, 15 *A.*3d 818 (2011); *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). To accomplish that end, we adhere to the belief that "the best indicator of ... [legislative] intent is the plain language chosen by the Legislature." *Gandhi, supra,* 201 *N.J.* at 176, 989 *A.*2d 256 (citing *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039).

██ The inquiry thus begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning. *See Shelley, supra,* 205 *N.J.* at 323, 15 *A.*3d 818. If the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources. *Ibid.* (citing *State v. D.A.,* 191 *N.J.* 158, 164, 923 *A.*2d 217 (2007)). In other words, extrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question; however, when the statutory language results in more than one reasonable interpretation, then resort may be had to other construction tools and

extrinsic aids to assist in the analysis. *Id.* at 323–24, 15 *A.*3d 818 (citing *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039).

With those principles in mind, we turn to the task at hand.

## IV.

### A.

With enactment of *N.J.S.A.* 2C:44–5, the Legislature has woven a piece on how a sentence should be configured for a defendant confronted with the possibility of serving multiple sentences. *N.J.S.A.* 2C:44–5(a) instructs courts on how to sentence a defendant with multiple offenses whose sentences can combine and overlap. It addresses the sentencing of a defendant on multiple offenses in a single sentencing proceeding, and states, with unmistakable clarity, that there shall be imposed "not more than one sentence for an extended term" when sentencing a defendant for more than one offense. *N.J.S.A.* 2C:44–5(a)(2). The statute also instructs the court to assess at sentencing whether the sentences shall be served concurrently or consecutively, addresses the aggregate length of consecutive terms to a county institution, and provides that there shall be no "overall outer limit" on the accumulation of consecutive sentences. *Ibid.*[9]

---

[9] This last part of the provision was added by the Legislature in a 1993 amendment and served to clarify New Jersey's rejection of the MPC approach, which imposes an outer limit on the accumulation of consecutive sentences. *MPC* § 7.06(1)(a)-(d). At the time the Code of Criminal Justice was being drafted, the New Jersey Criminal Law Revision Commission rejected the MPC approach as inconsistent with New Jersey's case law. 2 *Final Report of the New Jersey Criminal Law Revision Commission,* commentary to § 2C:44–5, at 335 (1971). The Legislature followed that recommendation by omitting any reference to a statutory limit on the accumulation of consecutive sentences. *L.* 1978, *c.* 95, § 2C:44–5(a). The 1993 amendment served to make our state's deviation from the MPC explicit. *L.* 1993, *c.* 233, § 1. Thus, to the extent that the MPC Commentary discusses limiting the accumulation of consecutive sentences as an overarching principle to subsections a or b, *see MPC* § 7.06 comments 1–2, it is inapposite as that principle does not animate *N.J.S.A.* 2C:44–5 (a) or (b).

Subsection b, on the other hand, instructs courts about sentences of imprisonment that are imposed at different times. Specifically, subsection b levels its sights on the sentencing of a defendant "who has previously been sentenced to imprisonment," and who must be sentenced "for an offense committed prior to the former sentence, other than an offense committed while in custody." *N.J.S.A.* 2C:44–5(b). That language renders implausible the AG's proffered straw-man "alternative" interpretation of the statute that would permit only one extended term in a convicted person's lifetime. The opening language to subsection b plainly makes its target the overlap or combining of multiple sentences when the second offense was committed before the sentence a defendant is serving. *See id.; see also State v. L.H.*, 206 *N.J.* 528, 547, 20 *A.*3d 1137 (2011) (Rivera–Soto, J., concurring) (discussing how origins of subsection b demonstrate that "[it] is addressed to the problem of a sentence of imprisonment imposed upon a person *who is already serving a term* under a sentence imposed for an earlier offense" (internal citation and quotation marks omitted)). It does not purport to apply as a perpetual ineligibility for any subsequent extended term once one is imposed. Indeed, that interpretation is at odds with the statute's title, which indicates that it is addressing multiple sentences, and its opening operative provisions, which plainly focus on the impact of such multiple sentences, in combination, on a defendant's overall sentence length. *See N.J.S.A.* 2C:44–5(a) and (b).

Applying the plain language of the statute, which must be our starting point, *see Gandhi, supra,* 201 *N.J.* at 176, 989 *A.*2d 256, it is apparent that subsection b speaks directly and unambiguously

---

It bears mentioning that subsections a and b have been amended on one other occasion since their adoption in 1978. In 1983, the Legislature amended subsection a to remove a provision requiring that a sentence to a definite term in a county institution run concurrent with any term in a state institution, and amended subsection b to grant courts the discretion to determine whether the balance of a parole term on a prior sentence will run during a second sentence. *L.* 1983, *c.* 462, § 1. Neither of those changes are relevant to the issue under consideration in this appeal.

to the factual circumstances presented in defendant's sentencing. Hudson was sentenced in separate sentencing proceedings. By giving effect to the straightforward language of subsection b, Hudson clearly and unambiguously falls, factually, within its application, including its sweeping-in of subsection a's sentencing directives and all that entails. *See DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039 (stating that court's duty is to apply statute where plain language leads to unambiguous result). As we construe the statutory scheme presented in subsections a and b of *N.J.S.A.* 2C:44-5 and search for the legislative intent behind it, no salutary effect is gained from engaging in a formalistic assessment of whether proceedings should be deemed "one" or "two" due to the charges' origination in a single indictment. The statute's words direct the inquiry elsewhere. Subsection b speaks clearly, and directly, in terms of the date of the latter offense and the time of imposition of the prior sentence that the defendant is serving. We apply the clear words chosen by the Legislature that fit foursquare defendant Hudson's circumstances and bring to an end this aspect of our inquiry.[10]

The plain fact of the matter is that defendant was subject to two trial proceedings and two sentencing proceedings. And, in the second sentencing, he was sentenced on an offense that occurred at a time that preceded the imposition of his first sentencing wherein he received an extended-term sentence. At the first sentencing proceeding, the State certainly was aware of the severed trial that would occur later and of the timing of the offenses

---

[10] Because we find that the literal language of subsection b addresses defendant's circumstances, we need not reach the argument presented by the State and the AG that because it was his choice to sever the charges, he cannot claim that the two proceedings were in fact "two." If we were to find that there was a substantial lessening in the protections afforded to a defendant under subsection b as compared to subsection a, that argument would be distinctly problematic in that it presumes that it would be permissible to subject a defendant to the choice of either submitting to a trial made unfair due to prejudicial joinder of charges or risking the permissible receipt of an aggregate sentence comprising multiple extended terms imposed in separate proceedings.

to be tried in that matter. Therefore, we are not confronted in these circumstances with subsection b's application to the type of cold case where the State never knew of the possibility of defendant's connection with the other offense that could lead to the second-in-time trial and sentencing at the time of the first trial and sentencing. *See, e.g., L.H., supra,* 206 *N.J.* at 548–50, 20 *A.*3d 1137 (discussing inapplicability of gap-time under subsection b for time spent on defendant's subsequent-in-time convictions when defendant's connection with earlier unsolved sexual assault offense was utterly unknown to State). The State could not possibly combine, or consciously coordinate, sentencing in such circumstances in order to fashion an appropriate overall sentence for such multiple offenses; however, such circumstances are not present here and we therefore need not consider the potential outer edges to the elasticity permitted by the "so far as possible" language included by the Legislature.

We turn then to the meaning to be ascribed to the language used by the Legislature in *N.J.S.A.* 2C:44–5(b)(1)'s direction to sentencing courts.

## B.

*N.J.S.A.* 2C:44–5(b)(1) directs courts, when imposing a sentence that may combine or overlap with an already imposed sentence defendant is serving, that any sentence imposed "shall so far as possible conform to subsection a. of this section." We note at the outset that nothing in that language limits subsection b's incorporation of subsection a's caveats to some, but not all, of the directions contained in subsection a. It does not by its plain terms exclude the multiple-extended-terms prohibition, as the State argues; rather, it embraces all of the sentencing mandates of subsection a, subject to the "so far as possible" qualifier. Thus, our interpretation of the meaning and intent of the subsection begins with the understanding that the Legislature expected the proscription against multiple extended terms to be as much a part of subsection b's application as subsection a's other mandates.

Multiple extended terms are thus generally forbidden by subsection b when a defendant is being sentenced for an offense committed prior to the former sentence that may combine or overlap with the sentence about to be imposed.

Turning to the meaning of the "so far as possible" qualifier in subsection b, we again find that the interpretation of that language urged by the State, as well as the AG, does not square with the plain language. In our view, "so far as possible" supports that the Legislature wanted the limitation *so far as* "possible." Plainly, the limitation would be excused from application when following its mandate would *not* be possible. By using the word "possible," the Legislature has made the prohibition the default, unless it is not possible to conform the sentence to subsection a's prohibition against multiple extended terms.

The State contends that the proscription is only a factor to be considered in the exercise of sentencing discretion by the second sentencing court. That would render the proscription the equivalent of a suggestion or preference. The AG refers to it as, at most, a presumption against multiple extended terms. Those interpretations are not apparent from the plain language for that is not what subsection b says. The word choice is "possible," not "practicable" or "preferable" or "presumptive." We cannot rewrite the Legislature's words; we can only enforce the language as it is written.

Further, we note that the statute contains a specific section vesting courts with discretion generally with respect to concurrent versus consecutive sentencing unless controlled specifically by another subsection, *see N.J.S.A.* 2C:44–5(d), but there is no equivalent vesting of discretion in respect of multiple extended-term sentences. We have only the specific prohibition in subsection a, made applicable in specific settings through subsection b. The Legislature was prescient to include minimally qualifying language in subsection b, which allows some leeway that permits adjustment for the evolution of mandatory extended-term sentences, *see, e.g.,* *N.J.S.A.* 2C:43–6(f), or other developments that bollix the antici-

pated planning and coordination in sentencing a defendant to cumulating sentences through separate sentencing proceedings.

We therefore discern from the plain language a clear direction to sentencing courts. The prohibition against multiple extended-term sentences applies, as far as it is possible to do so, when sentencing a defendant who is already serving a sentence and who is about to be sentenced for an offense that predated imposition of that sentence. The construction given to the qualifying "so far as possible" language does not render the qualifier superfluous. The qualifier would come into application, certainly, if the offense for which a defendant (who is already serving a discretionary extended term) is being sentenced, second in time, is one that is subject to a mandatory extended term. *See, e.g., N.J.S.A.* 2C:43–6(f). In such circumstances, the law requiring the mandatory extended term would override the more general sentencing direction contained in *N.J.S.A.* 2C:44–5(b)(1). *See Trinity Cemetery Ass'n v. Twp. of Wall,* 170 *N.J.* 39, 46, 784 *A.2d* 52 (2001) ("[I]t is well-established that a specific statutory provision dealing with a particular subject prevails over a general statute on the same subject." (internal citations and quotation marks omitted)). Other potential extenuating examples are possible to envision, subject to further case development. *See, e.g., supra,* Part IV. A, at 532–33, 39 *A.*3d at 161–62 (discussing "cold case" example as not fitting subsection's purpose of addressing sentences that overlap or combine to be served together). Thus, the qualifying wording has substance and applicability without giving the qualifier so broad a sweep that the clear and plainly included proscription is reduced to a mere preference to be considered in unguided fashion in the discretion of the sentencing court.[11]

## C.

Finally, we add that we discern no guidance on the instant matter from the legislative inaction that the State and the AG

---

[11] If we have misperceived the legislative intent, the Legislature can remedy that with a clarifying amendment.

underscore. Specifically, it is contended that the Legislature's failure to correct past decisions that permitted more than one extended term to be imposed on a defendant in separate sentencing proceedings should inform us that such results were intended to be permitted under *N.J.S.A.* 2C:44–5. There are several responses to that argument. First, the only previous decisions rendered by this Court on the subject of multiple extended-term sentences addressed specifically the application of *N.J.S.A.* 2C:44–5(a) to multiple extended terms imposed in a single proceeding. *See Papasavvas, supra,* 163 *N.J.* 565, 751 *A.*2d 40, and *Pennington, supra,* 154 *N.J.* 344, 712 *A.*2d 1133. Legislative inaction to those decisions tells nothing about *N.J.S.A.* 2C:44–5(b).

Second, as for the two Appellate Division cases relied on by the State, *Reldan, supra,* 231 *N.J.Super.* 232, 555 *A.*2d 653, and *Williams, supra,* 299 *N.J.Super.* 264, 690 *A.*2d 1082, both involved factual circumstances that did not implicate subsections a or b. Multiple sentencing proceedings were involved in each, rendering subsection a facially inapplicable. And, neither discussed the application of subsection b at all. In each, the second-in-time imposed sentence related to an offense that did not fit the temporal requirements of subsection b.

Legislative inaction is a thin reed generally on which to base an interpretive argument. It is of even less worth when the decisions to which one might reasonably "expect" a legislative reaction do not even apply the subsection under interpretation. Moreover, as defendant rightly contends, the two decisions, on whose back this argument would be carried in respect of subsection b, have no applicability to the facts of the case before us as neither fit the factual and temporal requirements for subsection b's application. That point also was not lost on the Appellate Division in the recent decision in *Pennington, supra,* 418 *N.J.Super.* 548, 14 *A.*3d 790.

In *Pennington, supra,* Judge Waugh, writing for the panel, distinguished *Reldan* and *Williams* on their different factual bases as well as for their lack of analysis of subsection b's applicability, and considered, for the first time as far as our research reveals,

the issue of *N.J.S.A.* 2C:44–5(b)(1)'s application to multiple extended terms. *Id.* at 554–56, 14 *A.*3d 790. The Appellate Division concluded, as do we, that a "plain reading of the statutory language" supports the "argument that the imposition of a second extended term under the circumstances of this case was not permitted" under *N.J.S.A.* 2C:44–5(b)(1). *Id.* at 557–58, 14 *A.*3d 790. The panel also deduced support from the MPC Commentary. *Ibid.* We however do not view the commentary as lending much help in this regard,[12] other than to echo, as the *Pennington* panel noted, that the overriding principle of our statutory subsection, and its MPC counterpoint, undoubtedly was

> that the timing of trials or the number of trials for different offenses should not affect the limitations established by Subsection (1). Thus, if a defendant has committed two offenses, the sentencing limitations established by this section will apply if he is tried separately for the two crimes as well as if he is tried for both offenses at the same time. Subsection (2) also sets forth other principles to control the situation in which the defendant is being sentenced for an offense that was committed prior to the imposition of another sentence.
>
> [*Id.* at 557, 14 *A.*3d 790 (quoting *MPC* § 7.06 explanatory note).]

In sum, the legislative inaction argument advanced by the State and the AG is unconvincing.

To conclude, we adhere to a plain-meaning reading of the language of *N.J.S.A.* 2C:44–5(b)(1) and hold that it was legal error to have imposed a second extended-term sentence on defendant in his trial on the charges stemming from his assaults on G.B. The timing and sequence of his offenses and sentencing bring him squarely under *N.J.S.A.* 2C:44–5(b)(1)'s application. Accordingly,

---

[12] Because the MPC contained an aggregate limitation on consecutive sentences, much of its commentary discusses that as an overriding concern. *See* *MPC* § 7.06 comments 1–2. Our case law did not have that limitation and it was rejected for inclusion in the Code when adopted. 2 *Final Report of the New Jersey Criminal Law Revision Commission,* commentary to § 2C:44–5, at 335 (1971). It is not possible to take much succor from the MPC commentary in this inquiry because its focus is on consecutive sentences, an approach rejected by our Criminal Law Revision Commission and by the Legislature. *See supra* at 530–31 n.9, 39 *A.*3d at 160 n.9. Needless to say, our law incorporated specifically the prohibition against multiple extended-term sentences and we must enforce the legislative choice in that regard.

the proscription against multiple extended-term sentences, incorporated from subsection a through subsection b, was applicable to Hudson and must be implemented. Because the sentence imposed transgressed the legislative policies of *N.J.S.A.* 2C:44–5, defendant's extended-term sentence on Count 13 must be reversed. It is of no legal matter that the actual sentence imposed on Hudson was the equivalent of the top of the former ordinary range for a third-degree crime. The sentence was imposed as a discretionary extended term, a sentence made illegal under *N.J.S.A.* 2C:44–5(b)(1).

## V.

The judgment of the Appellate Division is reversed only in respect of defendant's sentence on Count 13. The matter is remanded for re-sentencing.

Justice PATTERSON, dissenting.

The majority holds that *N.J.S.A.* 2C:44–5(b)(1) bars the imposition of an extended term sentence for third-degree aggravated assault on defendant because in his prior sentencing proceeding, severed by his own motion from this separately-considered crime, defendant had been sentenced to an extended term for a third-degree offense involving a different victim. Because I agree with the Appellate Division that the trial court properly exercised its discretion in imposing upon defendant a sentence for this crime that included an extended term, I respectfully dissent. In my view, the majority's construction of *N.J.S.A.* 2C:44–5(b)(1) contravenes the statute's goals and legislative history, and unnecessarily constrains the discretion of sentencing courts.

*N.J.S.A.* 2C:44–5(a) restricts a sentencing court's discretion when simultaneously sentencing a defendant for more than one crime in two respects: (1) "[t]he aggregate of consecutive terms to a county institution shall not exceed 18 months;" and (2) "[n]ot more than one sentence for an extended period shall be imposed."

*N.J.S.A.* 2C:44–5(a)(1) and (2). *N.J.S.A.* 2C:44–5(b) provides that "[w]hen a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody," *N.J.S.A.* 2C:44–5(b), "the multiple sentences imposed shall so far as possible conform to subsection a. of this section." *N.J.S.A.* 2C:44–5(b)(1). Absent the phrase "so far as possible," there would be no question that when *N.J.S.A.* 2C:44–5(b)(1) applies, a sentencing court may not impose more than one extended term sentence, and the majority's conclusion would be self-evident. The language "so far as possible" is part of the statute, however, and the Legislature's intent when it chose to include those four words is thus the central issue.

The majority ascribes to the language "so far as possible" a plain meaning. It concludes that if *N.J.S.A.* 2C:44–5(b)(1) applies, a second extended term sentence would be barred unless (1) the defendant has also committed an offense that requires a mandatory extended term, such as a violation of *N.J.S.A.* 2C:43–6(f), that would "override the more general sentencing direction contained in *N.J.S.A.* 2C:44–5(b)(1)," or (2) other situations necessitating another extended term develop, such as a "cold case" in which the State, at the time of the first trial and sentencing, would have been unaware of a prior crime rendering defendant eligible to be sentenced to an extended term. *Ante* at 534–36, 39 *A.*3d at 163. In the majority's view, this construction is clear based upon the unambiguous language of the statute. *Ante* at 535–36, 39 *A.*3d at 163.

I respectfully differ from the majority's view of the import of the statutory language. The Legislature did not use the precise language that it typically does when it conveys the message to which the majority refers. When the Legislature expresses its intent that statutory language shall govern unless, in a given case, it would directly contravene another provision of the statutory scheme, it uses such language as "unless otherwise provided by"

or "except as otherwise provided." [1] No such language is found in *N.J.S.A.* 2C:44–5 (b)(1). There, instead of qualifying the limitation on extended term sentences with "unless otherwise provided by" or "except as otherwise provided," the Legislature chose to modify the word "shall" with the more general phrase "so far as possible." *N.J.S.A.* 2C:44–5(b)(1). By virtue of the Legislature's choice of language, the direction to sentencing courts—not to impose a second extended term when *N.J.S.A.* 2C:44–5(b) applies—is not intended to be absolute. *N.J.S.A.* 2C:44–5 (b)(1).

The crucial word "possible" has a variety of definitions:

Capable of existing, happening, being, becoming or coming to pass; feasible, not contrary to nature of things; neither necessitated or precluded; free to happen or not; contrasted with impossible. In another sense, the word denotes improbability without excluding the idea of feasibility. It is also sometimes equivalent to "practicable" or "reasonable," as in some cases where action is required to be taken "as soon as possible."

[*Black's Law Dictionary* 1166 (6th ed. 1990).]

In light of this range of definitions, the meaning of the Legislature's direction that no more than one sentence for an extended term shall be imposed "so far as possible" is not, in my view, obvious from the plain language. For example, if "possible" is defined as "practicable" or "reasonable," the Legislature intended it to be more broadly construed than the majority suggests.

Accordingly, because the phrase that the Legislature actually chose to convey its meaning is ambiguous, under our rules of statutory construction, the Court may "turn to extrinsic evidence for guidance." *State v. Gandhi*, 201 *N.J.* 161, 177, 989 *A.*2d 256 (2010) (citing *Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 192 *N.J.* 189, 195, 927 *A.*2d 543 (2007)). As the Court held in *DiProspero v. Penn*, 183 *N.J.* 477, 492–93, 874 *A.*2d 1039 (2005):

---

[1] *See, e.g., N.J.S.A.* 2C:27–12(b) ("Except as otherwise provided in section. . . ."); *N.J.S.A.* 2C:52–27 ("Unless otherwise provided by law. . . ."). Notably, the Legislature specifically provided that persons convicted of violating *N.J.S.A.* 2C:17–8 (tampering with a nuclear plant which results in death) are subject to an extended term "notwithstanding the provisions of *N.J.S.A.* 2C:44–3."

[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, "including legislative history, committee reports, and contemporaneous construction." *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A.2d* 123 (2004) (internal quotations omitted). We may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language. *See Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A.2d* 495 (2001).

[*DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.2d* 1039.]

In its interpretation of statutes, the Court is required to effectuate the legislative plan that may be discerned "from the enactment 'when read in the full light of its history, purpose and context.'" *State v. Lewis,* 185 *N.J.* 363, 369, 886 *A.2d* 643 (2005) (quoting *State v. Gill,* 47 *N.J.* 441, 444, 221 *A.2d* 521 (1966)). Importantly, *N.J.S.A.* 2C:1-2(c) provides:

The provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved. The discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes stated in this section.

[*N.J.S.A.* 2C:1-2 (c).]

The "general purposes" of the Code's sentencing provisions are:

(1) To prevent and condemn the commission of offenses;

(2) To promote the correction and rehabilitation of offenders;

(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(6) To differentiate among offenders with a view to a just individualization in their treatment;

(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders; and

(8) To promote restitution to victims.

[*N.J.S.A.* 2C:1-2 (b).]

Further, when determining the legislative intent behind any statute, including *N.J.S.A.* 2C:44-5, "we consider not only the particu-

lar statute in question, but also the entire legislative scheme of which it is a part." *In re Adoption of Child by W.P.,* 163 *N.J.* 158, 168, 748 *A.*2d 515 (2000) (quoting *Cornblatt v. Barow,* 153 *N.J.* 218, 234, 708 *A.*2d 401 (1998)). As this Court held in *State v. Haliski,* 140 *N.J.* 1, 656 *A.*2d 1246 (1995), " 'whatever be the rule of statutory construction, it is subordinate to the goal of effectuating the legislative plan as it may be gathered from the enactment when read in full light of its history, purpose and context.' " *Id.* at 9, 656 *A.*2d 1246 (quoting *Gill, supra,* 47 *N.J.* at 444, 221 *A.*2d 521). Statutory interpretations that lead to unreasonable or absurd results "are to be avoided." *Ibid.*

The legislative history of *N.J.S.A.* 2C:44–5 is of minimal assistance. The statute was originally enacted in 1978 and was based on Model Penal Code (*MPC*) § 7.06; the commentary to our Code of Criminal Justice characterizes *N.J.S.A.* 2C:44–5 as "similar to § 7.06 of the Model Penal Code." *N.J.S.A* 2C:44–5 (Historical and Statutory Notes). Given the Legislature's use of *MPC* § 7.06 as a basis for *N.J.S.A.* 2C:44–5, the commentary to the relevant MPC section may be consulted by the Court in determining the legislative intent. *See State v. D.A.,* 191 *N.J.* 158, 167, 923 *A.*2d 217 (2007). However, that commentary reflects that the limiting language of *N.J.S.A.* 2C:44–5(b)(1) was primarily intended to address a provision that did not find its way into the New Jersey Code of Criminal Justice. *MPC* § 7.06(1)(c) would have barred consecutive indefinite terms that "exceed in minimum or maximum length the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed[.]" *Model Penal Code and Commentaries (MPCC)* § 7.06(1)(c) (1985). The commentary provides in part:

> Subsection (2) [of *MPC* § 7.06] is based on the premise that the timing of the trials for multiple charges against a defendant should have as little bearing on the extent of his exposure to consecutive sentences as possible. In other words, the limits on consecutive sentences should apply in like manner when the defendant is tried and sentenced in the same proceeding for multiple offenses and when he is tried separately for each of them, either by the same court or by another comparable court within the same state.
>
> [*MPCC, supra,* § 7.06, cmt. 3.]

However, as the majority notes, *ante* at 530–31 n. 9, 39 *A.*3d at 160 n. 9, our Legislature chose not to adopt the provision that is discussed by the drafters, *MPC* § 7.06(1)(c).[2]  *See N.J.S.A.* 2C:44–5; *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 244, 540 *A.*2d 1246 (1988).  Accordingly, the MPC authors' primary objective in drafting § 7.06(2)(a)—applying *MPC* § 7.06(1)(c)'s limitation on consecutive sentences when a defendant previously sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence—is irrelevant to *N.J.S.A.* 2C:44–5(b)(1), as enacted by the Legislature.  The MPC commentary thus provides little guidance to the Court.

One aspect of the legislative history of *N.J.S.A.* 2C:44–5 is important, however.  Nothing in the legislative history suggests that the language "so far as possible" was constricted to the narrow meaning ascribed to it by the majority—to exclude from the limitations of *N.J.S.A.* 2C:44–5(a)(2) sentences for offenses involving mandatory extended terms.  *See ante* at 534, 39 *A.*3d at 162–63.  This could not have been the Legislature's intent, because at the time of the statute's enactment, there were no such offenses in existence.  In 1978, when *N.J.S.A.* 2C:44–5 was enacted, and in 1979, when it was first amended, the New Jersey Code of Criminal Justice did not yet include provisions mandating extended terms.[3]  Nor could the "so far as possible" language

---

[2] The Legislature also altered a second *MPC* § 7.06 provision, which is irrelevant here: *MPC* § 7.06(1)(b).  Had the Legislature adopted that provision verbatim, it would have limited the aggregate time that a defendant could serve consecutive terms in a county correctional facility to a year; instead, the Legislature opted for a limit of eighteen months.  *N.J.S.A.* 2C:44–5 (a)(1).

[3] *See, e.g., N.J.S.A.* 2C:33–28(d) (mandatory extended term for soliciting, recruiting, coercing or threatening a person under eighteen years of age to commit enumerated offenses related to street gangs, enacted in 1999); *N.J.S.A.* 2C:43–6(c) (mandatory extended term for certain violations of the Graves Act, enacted in 1981); *N.J.S.A.* 2C:43–6(f) (mandatory extended term for certain drug crimes, enacted in 1987); *N.J.S.A.* 2C:43–6(g) (mandatory extended term for repeat offender assault firearm crimes, enacted in 1990); *N.J.S.A.* 2C:43–6.4(e) (mandatory extended term for certain crimes committed while serving a special sentence of parole supervision for life, enacted in 1994); *N.J.S.A.* 2C:43–7.1(b)

have been a reference to mandatory extended terms in the MPC, because it contained no mandatory extended sentences at that time. Consequently, there is nothing to suggest that the MPC's drafters intended the "so far as possible" language to refer to such sentences. It is unlikely that the 1978 Legislature enacted the New Jersey Code of Criminal Justice devoid of provisions mandating extended terms, and nonetheless added the "so far as possible" language to *N.J.S.A.* 2C:44–5(b)(1), for the sole purpose of anticipating a statutory change that was years away. If the Legislature had intended the phrase "so far as possible" to allow for mandatory extended terms that were not part of New Jersey's Code as it then existed, but only to anticipate a future change in the law to provide for such terms, it would surely have so indicated.

It is, in my view, more likely that the Legislature included the language "so far as possible" in *N.J.S.A.* 2C:44–5(b) in order to leave to sentencing judges an essential modicum of discretion to ensure that a given sentence will satisfy the Legislature's overarching sentencing goals. The Legislature has identified paramount objectives in enacting the sentencing provisions of the Code: deterrence and punishment of crimes, correction and rehabilitation of offenders, promotion of the public safety, and fairness, consistency and "just individualization" in sentencing. *N.J.S.A.* 2C:1–2(b). *N.J.S.A.* 2C:44–5 should be construed in accordance with the purpose of the persistent offender extended term statute, *N.J.S.A.* 2C:44–3, to enhance the punishment for habitual offenders. *See State v. Pennington,* 154 *N.J.* 344, 361, 712 *A.*2d 1133 (1998). Statutory sentencing criteria, not the court calendar, should govern the outcome; extended term sentences imposed in separate proceedings should be no more severe than the maximum sentences that could have been imposed by a single judge in a

---

(mandatory extended term for repeat violent offenders, enacted in 1995); *N.J.S.A.* 2C:44–3 (mandatory extended term for sexual assault in violation of *N.J.S.A.* 2C:14–2, or aggravated sexual assault in violation of *N.J.S.A.* 2C:14–3, enacted in 1994); *N.J.S.A.* 2C:44–5.1 (mandatory extended term for certain crimes committed while released on bail, enacted in 1997).

single proceeding. *See Richardson, supra,* 110 *N.J.* at 255, 540 *A.*2d 1246 (sentencing courts should respect the principle that "to the extent possible, sentencing for multiple offenses should not produce disparate results because of the incidental chronology of sentencing"); *Meyer v. State Parole Bd.,* 345 *N.J.Super.* 424, 430, 785 *A.*2d 465 (App.Div.2001), *certif. denied,* 171 *N.J.* 339, 793 *A.*2d 717 (2002); *State v. Guaman,* 271 *N.J.Super.* 130, 133–34, 638 *A.*2d 162 (App.Div.1994).

While a limitation to one extended term under *N.J.S.A.* 2C:44–5(b) will promote these objectives in most instances, our courts should retain the discretion to consider the nuances of a given case in devising a sentence. A sentencing judge is uniquely situated to identify the unusual situation in which a blanket prohibition on a second extended term would give a persistent offender an unfair and arbitrary advantage, and thereby contravene legislative goals. Construed to preserve such limited discretion, the true significance of the phrase "so far as possible" becomes apparent.

Indeed, *N.J.S.A.* 2C:44–5 has long been interpreted to permit the imposition of a second extended term, at the discretion of the trial judge, when a defendant who qualifies as a persistent offender under *N.J.S.A.* 2C:44–3 is sentenced for different crimes in different proceedings. *See State v. Williams,* 299 *N.J.Super.* 264, 272–73, 690 *A.*2d 1082 (App.Div.1997) (*N.J.S.A.* 2C:44–5(a)(2) "does not apply to a situation in which two different courts have imposed extended terms for different offenses"); *State v. Reldan,* 231 *N.J.Super.* 232, 238, 555 *A.*2d 653 (App.Div.1989) (same); Cannel, *New Jersey Criminal Code Annotated,* comment 2 on *N.J.S.A* 2C:44–5 (2011) ("The limitation of the statute has no application where extended terms have been imposed by two different courts for different offenses and at different times."). *Contra State v. Pennington,* 418 *N.J.Super.* 548, 14 *A.*3d 790 (App.Div.2011) (discussed by the majority, *ante* at 536–37, 39 *A.*3d at 164). The Legislature is "presumed to be aware of the judicial construction placed on an enactment." *State v. Smith,* 197 *N.J.* 325, 335, 963 *A.*2d 281 (2009) (quoting *State v. Chapland,* 187 *N.J.*

275, 291, 901 *A*.2d 351 (2006)). It has not amended the "so far as possible" language of *N.J.S.A.* 2C:44–5(b)(1) in the thirty-four years since the statute was enacted, despite the long-standing judicial construction that is rejected by the majority in this case.

The Legislature's distinction between sentences imposed in a single proceeding under *N.J.S.A.* 2C:44–5(a)(1), which does not contain the "so far as possible" language, and *N.J.S.A.* 2C:44–5(b)(1), which does, is consonant with the legislative purpose if that language is read to grant limited discretion to the sentencing court. When a defendant is sentenced to two or more offenses in the same proceeding, the sentencing court is limited to a single extended term sentence. *N.J.S.A.* 2C:44–5(a)(2); *State v. Papasavvas,* 163 *N.J.* 565, 627, 751 *A*.2d 40 (2000); *Pennington, supra,* 154 *N.J.* at 361, 712 *A*.2d 1133. With all of the defendant's offenses before it, that court is in a position to impose an extended term for the most serious offense, if warranted by an application of *N.J.S.A.* 2C:44–3's criteria to the specific case.

In contrast, as the majority understands that "so far as possible" limitation, a subsequent sentencing court has no discretion to achieve a similar result. A sentencing court confronted with a defendant previously sentenced to an extended term sentence for a lesser crime and who then appears for sentencing on a higher-degree offense is prohibited from choosing the defendant's most serious offense for the imposition of the extended term. Only if the second sentencing court is afforded sufficient discretion to sentence the defendant to a second extended term can the court ensure that the defendant's offenses—not an accident of timing—will guide the result.[4]

---

[4] This is illustrated by the companion case of *State v. McDonald,* 209 *N.J.* 78, 35 *A*.3d 669 (2012). There, the majority of this Court today holds that the defendant, who had been previously sentenced to an extended term for a third-degree crime, could not be sentenced in a subsequent proceeding to an extended term for a second-degree offense, even though the overall sentence would have complied with the range applicable to the more serious offense. By virtue of the Court's construction of *N.J.S.A.* 2C:44–5(b)(1) to eliminate the sentencing court's

This case illustrates the appropriate exercise of such discretion. The maximum ordinary term that could have been imposed for defendant's third-degree offense was five years. *N.J.S.A.* 2C:43–6(a)(3). His sentence in this case, the lowest extended term sentence that could be imposed under *N.J.S.A.* 2C:43–7(a)(4), was five years. Notwithstanding his election to seek severance of his twenty-two-count indictment, defendant's sentence was comparable to what a sentencing court could have imposed had defendant been tried, convicted and sentenced in a single proceeding in which the court was limited by *N.J.S.A.* 2C:44–5(a) to a single extended term. Defendant's sentence was within the statutory range that would have been available to the sentencing court in a combined proceeding. The Legislature's purpose in enacting *N.J.S.A.* 2C:44–3 and *N.J.S.A.* 2C:44–5 was fully achieved by the trial court's sentence, and properly construed by the Appellate Division panel that affirmed the sentence.

I disagree with the majority that construing *N.J.S.A.* 2C:44–5(b) to deprive trial courts of the opportunity to impose an extended term sentence in matters covered by that provision, no matter what the circumstances of the individual case, is either warranted by the language of the statute or consonant with the Legislature's objectives. Accordingly, I would affirm the determination of the Appellate Division, and I respectfully dissent.

Judge WEFING (temporarily assigned), dissenting in part and concurring in part.

I write separately because, although I agree with my colleague Justice Patterson that *N.J.S.A.* 2C:44–5b(1) recognizes that a trial judge, faced with crafting an appropriate sentence for a defendant who had previously been sentenced to an extended-term sentence for a completely separate conviction, possesses a residuum of judicial discretion to impose a second extended-term sentence

---

discretion, the defendant in McDonald will receive a substantial benefit by virtue of the chronology of her sentences.

upon that defendant, I also agree with my colleague Justice LaVecchia that under the factual complex presented to us, this defendant is entitled to be resentenced. I come to that conclusion, however, through a different route.

The only reason that this defendant was subjected to separate sentencing proceedings was that the initial trial judge granted his motion to sever certain counts of the indictment to avoid the risk of undue prejudice and was then, after conclusion of the first proceeding, fortuitously transferred to another division. If this matter had proceeded in the normal course, defendant would have been tried on all counts before the same trial judge before he was sentenced on any. The quantum of his aggregate sentence for all of his convictions would have been determined by one judge, who heard all of the proceedings. In that posture, he could not have received two extended-term sentences.

In my judgment, a defendant's sentencing exposure should not be increased because of such a coalescence of events. Further, I cannot consider the potential for harm to be obviated because defendant's second extended-term sentence was, legally, within the range of what could have been imposed if he had been sentenced at one final proceeding. The second sentencing court viewed the permissible range to span from five to ten years, rather than from three to five years. Defendant is entitled to be sentenced by a court that employs the correct range; it is of little solace to him that the same result could have been achieved by a different route.

*For reversal in respect of defendant's sentence on count 13/remandment*—Chief Justice RABNER, and Justices LONG, LaVECCHIA, and ALBIN—4.

*For dissent*—Justices HOENS and PATTERSON—2.

*For concurrence in part/dissent in part*—Judge WEFING (temporarily assigned)—1.