**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0363-17T2

TOWNSHIP OF WYCKOFF,
BOROUGH OF GLEN ROCK,
and BOROUGH OF MIDLAND
PARK, all on behalf of themselves
and all others similarly situated,

 Plaintiffs-Appellants/
 Cross-Respondents,

v.

VILLAGE OF RIDGEWOOD,

 Defendant-Respondent/
 Cross-Appellant.

_____

Argued May 21, 2019 – Decided August 5, 2019

Before Judges Rothstadt, Gilson and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5651-12.

Joseph B. Fiorenzo argued the cause for appellants/cross-respondents (Sills Cummis & Gross, PC, attorneys; Joseph B. Fiorenzo, of counsel and on the briefs; Gregory Edward Reid, on the briefs).

William W. Northgrave argued the cause for respondent/cross-appellant (Mc Manimon Scotland & Baumann, LLC, attorneys; William W. Northgrave and Thaddeus John Del Guercio, on the briefs).

PER CURIAM

This appeal arises out of disputes over several rate increases the Ridgewood Water Utility (Utility) charged for potable water. Defendant Village of Ridgewood (Ridgewood or defendant) owns and operates the Utility, which supplies water to the residents of Ridgewood and three other municipalities. Plaintiffs, the Township of Wyckoff, Borough of Glen Rock, and Borough of Midland Park, challenged three ordinances passed by Ridgewood that authorized the Utility to increase rates by approximately thirty-seven percent over five years.

Following a bench trial, the trial court held that the ordinances were arbitrary, capricious, and unreasonable, and, thus, invalid. The court then remanded the matter to the Ridgewood Council to establish appropriate rates for the years in question. The trial court also ordered that plaintiffs be refunded the difference between the rates actually charged and the rates to be established on remand. Those rulings were embodied in a judgment entered on July 20, 2017. Plaintiffs appeal from that judgment, and defendant cross-appeals.

Plaintiffs argue that the trial court erred in remanding the matter and they should be refunded the difference between the invalid rates and the rates that had been in effect before the ordinances were adopted. Plaintiffs also argue that the trial court should have required defendant to return millions of dollars that were transferred from the Utility to Ridgewood as surplus. Finally, plaintiffs assert that they were entitled to attorney's fees. On its cross-appeal, defendant argues that the trial court erred in invalidating the ordinances, in capping the annual amount of surplus that can be transferred from the Utility to Ridgewood at five percent of the Utility's budget, and in not finding plaintiffs' complaint was time-barred.

Having considered the arguments of all parties in light of the record and law, we affirm substantially for the reasons set forth in the comprehensive 104-page opinion issued by Judge Lisa Perez-Friscia. The factual findings made by Judge Perez-Friscia are supported by substantial, credible evidence. Moreover, we discern no error in her legal conclusions.

I.

Ridgewood is a municipal corporation that owns and operates the Utility as authorized by the County and Municipal Water Supply Act (Water Supply Act), N.J.S.A. 40A:31-1 to -24. In addition to providing potable water to

residents of Ridgewood, the Utility also supplies water to the residents of Wyckoff, Glen Rock, and Midland Park. Thus, the Utility has over 20,000 customers, including more than 1000 who are not residents of Ridgewood.

The Utility controls or operates fifty-four wells and numerous buildings, water treatment facilities, and storage tanks. It also has approximately thirty-five full-time employees, and uses various support services supplied by Ridgewood. Accordingly, the Utility periodically requests Ridgewood to set the water rates it charges to its customers to generate the revenue to operate.

Effective in 2010, 2011, and 2012, Ridgewood adopted three ordinances, which increased by a total of more than thirty-seven percent the water usage rates charged by the Utility. Thus, customers went from paying $3.32 per thousand gallons of water to $4.68.

The first ordinance, Ordinance No. 3236, became effective January 1, 2010 (the 2010 Ordinance). It was adopted by the Ridgewood Council after hearing from representatives of the Utility and Ridgewood. Those representatives informed the Council that there had not been a rate increase since 2004, the Utility's operating expenses had increased, capital projects had been undertaken and were anticipated, and the Utility had incurred a deficit of over $400,000 in 2008, and was projecting a $500,000 deficit for 2009.

The Ridgewood Council was also provided with a comparison of the water usage rates charged in nearby communities. The Council was then advised that Ridgewood's proposed rate increase would be in the middle range of the rates charged in other communities.

Furthermore, the Council was given a report prepared by Louis C. Mai, a Certified Public Accountant and Registered Municipal Accountant. Mai had been retained by Ridgewood in 2008 to perform audits, and was asked in 2009 to review and develop a new rate structure for the Utility. Mai told the Ridgewood Council that the Utility was running a deficit. He also projected that water consumption rates would decline in 2009, causing a reduction in the Utility's anticipated revenues.

In preparing the information and projections provided to the Ridgewood Council, representatives of the Utility, Ridgewood, and Mai relied on allocation of indirect costs from Ridgewood to the Utility. Those cost allocations included charges for fire, police, healthcare, pension, and other expenses for services provided to the Utility by Ridgewood. Those cost allocations were based on a study conducted in 2003.

After receiving and considering the information provided to it, the Ridgewood Council voted to adopt the 2010 Ordinance. That ordinance

5

increased the water usage rates by approximately twenty-one percent, from $3.32 per thousand gallons to $4.00.

In late 2010, the Ridgewood Council considered another water usage rate increase. The Council was asked to adopt Ordinance No. 3272, to become effective January 1, 2011 (the 2011 Ordinance). Under the 2011 Ordinance, water usage rates would increase by five percent, going from $4.00 per thousand gallons to $4.20.

Representatives from Wyckoff, Glen Rock, and Midland Park objected to the proposed 2011 Ordinance at a public hearing the Ridgewood Council conducted in December 2010. In particular, the other municipalities presented testimony from Gary Higgins, a financial advisor hired by Wyckoff, Glen Rock, and Midland Park.

Higgins informed the Ridgewood Council that he had reviewed financial data from the Utility going back to 2004. He told the Council that twenty-two percent of the Utility's $12,600,000 budget for 2010 was comprised of indirect costs allocated from Ridgewood to the Utility. Higgins then opined that most of those allocated costs bore no relationship to the operations of the Utility. Higgins also stated that there was no support for the reported deficits of the

A-0363-17T2

Utility. Thus, Higgins concluded that the 2010 rate increase was not necessary, and that the proposed 2011 rate increase of five percent was "not legitimate."

Representatives of the Utility and Ridgewood provided different information to the Council in consideration of the 2011 Ordinance. In that regard, Mai advised the Council that water consumption was below average and that the 2010 rate increase had not generated the anticipated revenues. Mai also opined that the five percent rate increase in 2011 was necessary to balance the Utility's budget. Ultimately, the Ridgewood Council voted to adopt the 2011 Ordinance.

A third water usage rate increase was adopted, effective in 2012. That ordinance, Ordinance No. 3319, increased water usage rates by five percent, from $4.20 per thousand gallons to $4.41 (the 2012 Ordinance). The 2012 Ordinance also provided: "Each year thereafter [Ridgewood], at [its] sole discretion shall increase water rates effective January 1 of that year, in an amount not to exceed 3%." Accordingly, water usage rates were increased in 2013 and 2014 by three percent each year. Thus, between 2010 and 2014, the water usage rates charged by the Utility increased by approximately thirty-seven percent.

A-0363-17T2

On February 1, 2010, a month after the 2010 Ordinance became effective, Wyckoff filed a proposed class action complaint in lieu of prerogative writs challenging the 2010 Ordinance. The complaint sought to declare the 2010 Ordinance invalid and requested damages for all water charges improperly assessed. In May 2011, the case was certified as a class action, in which Wyckoff, Glen Rock, and Midland Park acted as class representatives for their residents.

In July 2012, plaintiffs filed an amended class action challenging the 2011 and 2012 Ordinances, in addition to the 2010 Ordinance. Plaintiffs alleged that the ordinances were arbitrary, capricious, and unreasonable, violated statutory mandates, and discriminated against class members in violation of the state and federal constitutions.

Among other things, plaintiffs claimed that the rate ordinances Ridgewood adopted in 2010, 2011, and 2012 were inconsistent with N.J.S.A. 40A:31-10(a), which requires annual rental charges to be "uniform and equitable for the same type and class of use," and violated N.J.S.A. 40A:31-10(c), which limits the type of costs that can be included in establishing water rates. Plaintiffs claimed that the water rates established in the three ordinances improperly permitted the Utility to include millions of dollars of Ridgewood's municipal

operating expenses, such as the cost of providing health insurance to non-Utility employees, police department salaries and expenses, fire department salaries and expenses, and a significant portion of the fees charged by Ridgewood's attorney. Plaintiffs also claimed that the net effect of those improper allocations of expenses created a de facto lack of uniformity between the rates charged to Ridgewood residents and those charged to non-residents. Plaintiffs sought a declaratory judgment that the ordinances were invalid, an injunction preventing enforcement of the ordinances, refunds of the increases in water charges paid under the ordinances, compensatory damages, and attorney's fees.

Ridgewood filed an answer and counterclaim. The counterclaim asserted that if Ridgewood was required to "recast the . . . Utility budget[s]," it would "make appropriate adjustments to its rates" and would seek to recoup any shortfall in the rates charged to the plaintiffs' class of ratepayers.

Thereafter, the parties engaged in discovery. In 2013, plaintiffs and defendant filed cross-motions for summary judgment. On December 27, 2013, the trial court denied both motions for summary judgment and, instead, the court, sua sponte, transferred the case to the Board of Public Utilities (BPU) for an administrative proceeding to establish the appropriate water usage rates for the years in question. We, however, granted leave to appeal the order

transferring the matter to the BPU, reversed, and remanded the case to the trial court. Twp. of Wyckoff v. Vill. of Ridgewood, No. A-2703-13 (App. Div. July 15, 2015).

Following the remand, the trial court considered the substance of the summary judgment motions and denied both motions. The trial court then conducted a fourteen-day bench trial in late 2016 and early 2017. At trial, plaintiffs called six witnesses: Frank Moritz, the Director of the Utility from 1991 to 2015; Dorothy Stikna, the Chief Financial Officer of Ridgewood from 2004 to 2010; Mai; Katie Chen, a Principal Accountant for Ridgewood from 2005 to 2012; Stephen Sanzari, the Treasurer of Ridgewood; and Higgins. Defendant called three witnesses: David Scheibner, the Business Manager for the Utility; James Ten Hoeve, the Manager of Ridgewood from 2003 to 2009; and Steven Wielkotz, a financial expert.

Based on the testimony from the various witnesses and the documents and exhibits that were introduced into evidence, the trial court made extensive findings of facts. The court also made credibility findings, often crediting some of a particular witness's testimony, while not accepting other testimony from that same witness.

A-0363-17T2

The trial court found that Ridgewood did not have a proper factual foundation to support the rate increases in the 2010, 2011, and 2012 Ordinances. In that regard, the court found that plaintiffs, primarily through the testimony of Higgins, established that some of the indirect expenses allocated to the Utility were unreasonable. Specifically, the court found that Ridgewood had based its allocation of indirect expenses on a study conducted in 2003, but no new or recent study or reconciliation had been conducted. The trial court also made a number of other specific factual findings supporting its overall finding that Ridgewood did not have a reliable foundation for increasing the water usage rates.

In that regard, the court found (1) the water rate increases were made when Ridgewood was facing difficult financial times, and one of the ways that Ridgewood considered reducing its expenses was by allocating certain of its costs to the Utility; (2) no reliable financial data supported the reported and projected deficits at the Utility; (3) there had been a high turnover of senior personnel at the Utility and Ridgewood, which contributed to poor financial reporting, reviews, and projections; (4) the costs allocated to the Utility in 2010 through 2012 were not verified or based on reliable financial data; (5) the Mai report did not independently review costs and the projected water consumption

A-0363-17T2

was flawed; thus, that report, which the Ridgewood Council relied upon in enacting the 2010 Ordinance, was not reliable; and (6) the water usage rate comparisons presented to the Ridgewood Council in connection with the 2010 Ordinance were "not demonstrated to be an accepted competent methodology for establishing a rate structure."

The trial court also found, however, that other indirect expenses were reasonably allocated to the Utility. Thus, the trial court accepted some of Higgins's testimony and opinions, but rejected other portions. In particular, the trial court rejected Higgins's "all or nothing" approach of disallowing all indirect costs allocated to the Utility. The court also rejected Higgins's opinion as to the amount of damages due to plaintiffs. In contrast, the trial court accepted the testimony of defendant's expert, Wielkotz, to the extent that Wielkotz opined that some rate increases were necessary and that plaintiffs were not entitled to a complete refund of all the rate increases.

Based on its factual findings, the trial court then analyzed the legal arguments presented by the parties. The trial court first addressed defendant's argument that plaintiffs' challenges to the ordinances were untimely under Rule 4:69-6(a). That rule requires prerogative writ actions to be filed within forty-five days of the action sought to be challenged. The court reasoned that it was

12

in the interest of justice to enlarge the forty-five-day time limit, as allowed under the rule.

The trial court then turned to the substance of the case, and determined that plaintiffs had demonstrated that the 2010, 2011, and 2012 Ordinances were arbitrary, capricious, and unreasonable because they were adopted without a factual foundation substantiating the need for rate increases. The court also found that the rate increases were inconsistent with N.J.S.A. 40A:31-10(c).

In striking down the 2012 Ordinance, the trial court also struck down the provision that allowed the Utility to increase the rates by three percent each year in 2013 and 2014. Relying on N.J.S.A. 40A:31-10(c), the trial court held that Ridgewood had to pass an ordinance, based on a proper record, to implement future rate increases. The court reasoned that the Water Supply Act precluded Ridgewood from authorizing automatic rate increases.

Turning to damages, the court found that plaintiffs had not established a specific amount of their alleged damages. In that regard, the trial court found that plaintiffs had not presented evidence that allowed the court to make appropriate allocations and reimbursement computations. Consequently, the trial court concluded that a remand to the Ridgewood Council was necessary so the Council could determine the appropriate rate structure. The court directed

that the record be supplemented on remand so that revenues and direct costs could be reviewed and substantiated by the Ridgewood Council.

The court then ordered that a refund be "distributed to plaintiffs, based on the difference between the rate charged and the appropriate rate[s] determined [by the Ridgewood Council] on remand." The trial court retained jurisdiction to further review the matter as necessary.

Next, the trial court dismissed defendant's counterclaim, holding that Ridgewood could not retroactively transfer surpluses from the Utility. The court found, however, that Ridgewood was permitted to authorize the annual transfer of an available surplus in an amount not to exceed five percent of the Utility's costs of operation. The court further instructed that any surplus transferred "must be authorized and included in the local budget, in accordance with statutory criteria, and same should be adopted by ordinance." It found that "[t]aking an automatic cumulative 5% surplus transfer [was] not authorized by statute."

Finally, the court found that "the circumstances in this matter [did not] dictate the equitable allowance of litigation costs and attorney's fees." The court noted that the residential ratepayers of Wyckoff, Glen Rock, and Midland Park had an interest in correctly establishing the water rates.

14

The court embodied its final rulings in a judgment entered on July 20, 2017. That judgment (1) invalidated the 2010, 2011, and 2012 Ordinances; (2) remanded the matter to the Ridgewood Council to conduct a hearing to recalculate and establish the rates; and (3) ordered refunds to plaintiffs of the difference between the rates charged and the appropriate rates determined by the Ridgewood Council on remand. The court supported its judgment with a thorough, written opinion.

Plaintiffs moved for reconsideration. The trial court, however, denied that motion in an order entered on September 1, 2017. Thereafter, plaintiffs appealed and defendant cross-appealed. Plaintiffs also moved for a stay of the remand proceedings pending appeal. That motion was denied both by the trial court and by us.

II.

On appeal, plaintiffs make three primary arguments, with numerous related sub-arguments. Plaintiffs contend that the trial court erred by (1) remanding the issue of setting appropriate water usage rates and not making a ruling and award of damages to the class; (2) failing to award just over $3.6

A-0363-17T2

million in damages to plaintiffs for the improper transfer of surpluses from the Utility to Ridgewood; and (3) not awarding plaintiffs attorney's fees.[1]

In its cross-appeal, defendant argues that the trial court erred in (1) ruling that the three ordinances were arbitrary, capricious, and unreasonable; (2) finding that the water usage rate comparisons to surrounding communities were not a proper consideration in establishing water rate increases; (3) making certain findings that were against the weight of the evidence; (4) capping the annual transfer of the Utility's surplus at five percent of its budget; and (5) not finding that plaintiffs' complaint was time-barred.

Comparing the issues raised on the appeal and cross-appeal, and synthesizing some of those issues, we are presented with five primary issues. The issues are whether the trial court erred by (1) not finding that plaintiffs' challenge to the ordinances was time-barred; (2) invalidating the three ordinances; (3) remanding the matter to the Ridgewood Council to set

---

[1] In their reply brief, plaintiffs contended that the trial court also erred by allowing defendant's expert to testify to opinions that had not been included in his report. That issue was not included in plaintiffs' notice of appeal or as an argument in their initial brief on appeal. Instead, plaintiffs referenced the issue in the statement of facts in their initial brief and first raised the issue as an argument in their reply brief. Because "[i]t is improper to introduce new issues in a reply brief," we decline to consider this argument. In re Bell Atl.-N.J., Inc., 342 N.J. Super. 439, 442 (App. Div. 2001). Moreover, we are not persuaded by this argument.

16

appropriate water usage rates; (4) ruling that surpluses could be transferred from the Utility to Ridgewood, but capping the annual surplus transfer; and (5) not awarding plaintiffs attorney's fees.

Initially, we identify our standard of review. Municipal actions enjoy a presumption of validity. Cona v. Twp. of Washington, 456 N.J. Super. 197, 215 (App. Div. 2018) (quoting State v. Clarksburg Inn, 375 N.J. Super. 624, 632 (App. Div. 2005)). Accordingly, courts have a "limited role . . . in reviewing municipal rates for utility services." Meglino v. Twp. Comm. of Eagleswood, 103 N.J. 144, 152 (1986). "An ordinance establishing [such] rates will be upset only if patently unreasonable." New Providence Apartments Co. v. Mayor & Council of New Providence, 423 N.J. Super. 210, 216 (App. Div. 2011) (alteration in original) (quoting Meglino, 103 N.J. at 152). The party seeking to challenge an ordinance has the burden to establish that the ordinance is either invalid, or that it is arbitrary, capricious, or unreasonable. Timber Glen Phase III, LLC v. Twp. of Hamilton, 441 N.J. Super. 514, 523-24 (App. Div. 2015). Nevertheless, when a municipal utility supplies water to non-residents, a court should strictly construe the enabling legislation to protect non-resident customers. See Mayor & Mun. Council of Clifton v. Passaic Valley Water Comm'n, 115 N.J. 126, 137-38 (1989).

Here, the parties engaged in a fourteen-day trial, where they presented evidence beyond the record developed before the Ridgewood Council.  The trial court then made extensive findings of facts and conclusions of law.  "Final determinations made by [a] trial court sitting in a non-jury case are subject to a limited and well-established scope of review."  City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 271 (App. Div. 2018) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).  We will not "disturb the factual findings of the trial court 'unless we are convinced that they are so manifestly unsupported by[,] or inconsistent with[,] the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'"  Id. at 272 (alterations in original) (quoting D'Agostino, 216 N.J. at 182).  A trial court's credibility determinations are also accorded deference because the court "'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'"  Ibid. (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).  "To the extent that the trial court interprets the law and the legal consequences that flow from established facts, we review its conclusions de novo."  Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017) (first citing D'Agostino, 216 N.J. at 182;

then citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A.   Whether Plaintiffs' Complaint Was Time-Barred

Plaintiffs brought an action in lieu of prerogative writs.  Rule 4:69-6(a) states:  "No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed[.]" Accord Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 489 (App. Div. 2018) (quoting R. 4:69-6(a)).  This rule is "aimed at those who slumber on their rights."  Hopewell Valley Citizens' Grp., Inc. v. Berwind Prop. Grp. Dev. Co., 204 N.J. 569, 579 (2011) (quoting Schack v. Trimble, 28 N.J. 40, 49 (1958)).

Rule 4:69-6(a) does not define when actions in lieu of prerogative writs accrue, therefore, questions of accrual are left to substantive law.  Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 401 (App. Div. 2008). Substantive law establishes that a cause of action pursuant to Rule 4:69-6 challenging the actions of a municipal government accrues on the date that the actions are adopted.  See Concerned Citizens of Princeton, Inc. v. Mayor & Council of Princeton, 370 N.J. Super. 429, 446-47 (App. Div. 2004).

A-0363-17T2

Here, plaintiffs challenge the water usage rate increases implemented in the 2010, 2011, and 2012 Ordinances. The 2010 Ordinance was adopted on December 14, 2009, and became effective on January 1, 2010. Plaintiffs filed their initial action on February 1, 2010. Thus, that action was timely.

Thereafter, plaintiffs amended the complaint to challenge the 2011 and 2012 Ordinances after those ordinances were adopted. Furthermore, a fair and plain reading of plaintiffs' original complaint establishes that plaintiffs would be challenging any future rate increases. Accordingly, the amended complaint was also timely.

Defendant argues that although the complaint challenges the 2010, 2011, and 2012 Ordinances, plaintiffs base that challenge on contentions that the cost allocations that occurred between 2004 and 2009 were improper and without factual bases. Consequently, defendant argues that plaintiffs are really challenging the allocation of expenses between 2004 and 2009. Moreover, defendant contends that in 2004, the New Jersey Department of Community Affairs, Local Finance Board approved Ridgewood's water usage rate increase, and plaintiffs did not file a timely challenge to that administrative action.

Defendant's arguments concerning the time-bar issue are not based on a fair or accurate reading of plaintiffs' complaint. Plaintiffs are not challenging

20

the rate increase that was implemented in 2004. Instead, plaintiffs challenge three ordinances that were adopted between December 2009 and June 2012. That plaintiffs argue that the rate increases are based on improper cost allocations does not convert their action into a challenge to the Utility's or Ridgewood's budgets for years 2004 through 2009. In short, plaintiffs timely filed their complaint and the trial court did not err in denying defendant's motions to dismiss the complaint as time-barred.

B. Whether the Three Ordinances Were Invalid

As previously noted, Ridgewood owns and operates the Utility under the authority granted to it in the Water Supply Act. The Water Supply Act allows municipalities, such as Ridgewood, to "prescribe and, from time to time, alter rates or rentals to be charged to users of water supply services." N.J.S.A. 40A:31-10(a). The rates must be "uniform and equitable for the same type and class of use or service of the facilities[.]" Ibid.

In setting rates, a municipality

shall establish a rate structure that allows . . . [it] to:

(1) Recover all costs of acquisition, construction or operation, including the costs of raw materials, administration, real or personal property, maintenance, taxes, debt service charges, fees and an amount equal to any operating budget deficit

21

occurring in the immediately preceding fiscal year;

(2) Establish a surplus in an amount sufficient to provide for the reasonable anticipation of any contingency that may affect the operation of the utility, and, at the discretion of the [municipality], allow for the transfer of moneys from the budget for the water supply facilities to the local budget in accordance with [N.J.S.A. 40A:4-35.1].

[N.J.S.A. 40A:31-10(c).]

The Utility is subject to the "jurisdiction, regulation and control" of the BPU because it "suppl[ied] water to more than 1,000 billed customers within another local unit[.]" L. 1989, c. 109, § 1; N.J.S.A. 40A:31-23(d)(1). See also L. 1975 c. 184, § 1. Effective January 5, 2006, that provision of the Water Supply Act was amended to exempt municipalities from the BPU's rate-setting jurisdiction "whenever any supplying local unit or units charge the same rates or rentals to the billed customers outside of the supplying local unit or units as are charged to customers within the supplying local unit or units[.]" L. 2005, c. 267, § 1; N.J.S.A. 40A:31-23(e). The Utility continued to be subject to the jurisdiction of the BPU for service and reliability. N.J.S.A. 40A:31-23(f).

Instead of being subject to the BPU's rate-setting jurisdiction, municipalities must authorize rate increases by adopting an ordinance. N.J.S.A.

40A:31-23(e). By requiring an ordinance, the Legislature ensured that municipal water usage rate increases would be subject to the normal procedures and notice requirements governing ordinances. Accordingly, the municipality must give advanced notice of a proposed rate increase and hold a public hearing before adopting the ordinance implementing the rate increase. Ibid. See also N.J.S.A. 40:49-2 (detailing procedures for passing municipal ordinances); N.J.S.A. 10:4-9 (requiring public notice prior to all meetings of public bodies).

The Water Supply Act also requires that the rate increases are to be based on reliable financial information. See N.J.S.A. 40A:31-10(c). In that regard, N.J.S.A. 40A:31-10(c) identifies specific "costs" that can be recovered through water usage rates. Ibid. See also N.J.S.A. 40A:31-3(b) (defining "cost").

Here, the trial court found that Ridgewood did not have a reliable factual basis for the rate increases it implemented in the 2010, 2011, and 2012 Ordinances. The court made that finding based on the extensive evidence presented during the trial. The court also supported that overall finding by making a number of specific factual findings. Moreover, those factual findings were based on credibility determinations that the trial court made regarding the testimony provided by the nine witnesses who appeared at trial.

The principal factual findings by the trial court included findings that (1) Ridgewood did not establish whether and in what amount the Utility had operating deficits, and (2) Ridgewood used unreliable revenue projections.

To support the rate increases in the 2010 Ordinance, Ridgewood relied on testimony from Moritz and Mai. The trial court found that neither Moritz nor Mai properly accounted for the substantial indirect costs that were allocated to the Utility. The court also found that Ridgewood had not conducted a reliable examination of the Utility's deficits and indirect costs. Thus, the court found that the method by which the Utility's deficits were determined "was not credibly established" and the financial information provided to the Ridgewood Council was "question[able]." The trial court also found that the information provided to the Ridgewood Council included unreliable revenue projections because there was no rate study conducted to support the rate increases.

The trial court made similar findings with regard to the rate increases implemented in the 2011 and 2012 Ordinances. Again, the court found that those increases were not supported by reliable financial information or studies. Moreover, the court found that in 2011 and thereafter, the Ridgewood Council had been advised that there were significant concerns about the reliability of the

24

cost allocations, the Utility's deficits, and whether any rate increase was warranted.

All of the trial court's factual findings are amply supported by the evidence presented at the trial. Those findings are also supported by the court's credibility determinations. We discern no basis to reject any of the principal factual findings made by the trial court.

Applying the trial court's factual findings to the law, we also agree with the legal conclusions the trial court reached. Specifically, we agree that the rate increases implemented in the 2010, 2011, and 2012 Ordinances were arbitrary, capricious, and unreasonable because they lacked an adequate factual basis. As previously noted, the Water Supply Act requires rates to be based on specific costs. See N.J.S.A. 40A:31-10(c)(1). Here, the evidence established that Ridgewood did not have accurate or reliable financial reports or data establishing the costs of the Utility and whether and in what amount the Utility had deficits.

Defendant makes three primary arguments in challenging the trial court's findings that the three ordinances were invalid. First, defendant contends that no one, including plaintiffs, objected to the 2010 Ordinance. Defendant then goes on to argue that the Council relied on information provided by the Utility

and senior Ridgewood officials and that reliance was reasonable. We reject that argument given the factual findings made by the trial court. The Ridgewood Council was told that indirect costs allocated from Ridgewood comprised part of the Utility's operating expenses. The Council was also told that those allocations were based on a study conducted in 2003, and no new study or reconciliation had ever been performed. Given those facts, the Council had an obligation to question the financial information provided to it to ensure that the information was reliable. The trial court found the Council did not conduct that due diligence and that finding is supported by credible evidence.

Second, defendant contends that the trial court did not give appropriate consideration to the water rate comparisons information that had been provided to the Council. The Council had been told that rates from other communities had been reviewed and that the proposed increase in 2010 would be in the middle range of those other rates. The trial court correctly found that the comparisons, in and of themselves, could not be the basis for a rate increase. The Water Supply Act requires that rate increases be based on the actual costs of the Utility. See N.J.S.A. 40A:31-10(c). The comparisons, however, do not focus on the actual costs incurred by the Utility.

A-0363-17T2

Finally, defendant takes issue with four specific factual findings made by the trial court. Defendant argues that the trial court erred in finding that (1) there was no support for the allocation of time and expenses of Utility employees doing work for Ridgewood; (2) Ridgewood failed to establish that the Utility had deficits; (3) there was no factual support for the allocation of the entire salary of Moritz to the Utility; and (4) Mai had no reliable basis for his projections of revenue and water consumption.

Initially, we note that none of these factual findings, either individually or in combination, undermine the trial court's primary factual finding that Ridgewood lacked a reliable basis for establishing the rate increases in the three ordinances. In addition, having reviewed the record, the trial court's factual findings on all four of the challenged facts are supported by credible evidence in the record.

First, the trial court found Stikna, Ridgewood's former Chief Financial Officer, to be credible when she testified that the allocations were never reconciled in accordance with the 2003 study, and that the Utility was never reimbursed by Ridgewood for its employees' work performed for the benefit of Ridgewood. Second, although the Utility calculated a deficit, the trial court determined that that deficit was not based on reliable data, as Mai testified that

27

he did not perform a cost allocation study, but rather compiled data that was "spoon fed" to him by Stikna and the finance department. Third, the trial court found that the allocation of Moritz's entire salary to the Utility was not justified because he testified that he spent an hour to an hour-and-one-half on work for Ridgewood each day, and Stikna testified that indirect costs such as work performed for Ridgewood were never reconciled or reviewed. Fourth, the court found that Mai's predictions of revenue and water consumption for 2010 were flawed because Mai testified that he used the lowest water consumption rates to project water consumption for October, November, and December 2009, which ultimately affected the projection for 2010.

C.    The Remand to the Ridgewood Council

Plaintiffs argue that the trial court erred in remanding the matter to the Ridgewood Council to establish appropriate rates. They contend that they were entitled to a refund of the difference between what the rates were in 2009 and the invalid rate increases in the 2010, 2011, and 2012 Ordinances. Thus, plaintiffs seek a refund of the approximately thirty-seven percent increase in rates put into effect beginning January 1, 2010. That is, an approximately twenty-one percent increase in 2010, a five percent increase in 2011, a five percent increase in 2012, a three percent increase in 2013, and a three percent

increase in 2014. Plaintiffs assert that they submitted evidence, through their expert Higgins, to show that their damages as of July 31, 2016, were $13,834,324. We disagree.

Ridgewood was authorized by the Water Supply Act to set appropriate rates for the Utility. See N.J.S.A. 40A:31-10(a). The trial court found that Ridgewood did not have reliable financial information to properly set the increased rates that it implemented under the three ordinances. In that regard, the trial court found that much of the information provided to the Ridgewood Council was unreliable, out of date, and not verified. Critically, the trial court also found that since the last rate increase in 2004, the Utility had increased expenses and had undertaken significant capital improvements. Therefore, the trial court found that Ridgewood may well have the right to increase the rates, but it needed to do it based on a proper factual record.

Consequently, the trial court remanded the matter to the Ridgewood Council to set appropriate rates for the periods after January 1, 2010. The trial court also ruled that plaintiffs will be entitled to receive the difference between what they paid for their water under the invalid ordinances and the appropriate rates established on remand. Furthermore, the trial court retained jurisdiction to review the proceedings on remand and the award of a refund.

The trial court had the legal authority and acted appropriately in remanding the matter to the Ridgewood Council. It is well established that claimants are entitled to a refund of excessive fees if those fees are determined to be improper. See Automatic Merch. Council of N.J. v. Twp. of Edison, 102 N.J. 125, 130-31 (1986) (quoting In re Increase in Fees by N.J. State Bd. of Dentistry, 84 N.J. 582, 587 (1980)). "[O]rdinarily the proper procedure is for the agency [or municipality] to redetermine the fees in accordance with correct principles and to refund the excess." Id. at 131 (citing State Bd. of Dentistry, 84 N.J. at 589-90). In other words, where a municipal action is authorized by statute, but the municipality acts improperly, it can thereafter properly exercise its authority under the statute to calculate a refund to those harmed by the improper action. See id. at 130-32.

For example, in Automatic Merchandising, our Supreme Court addressed a situation where a municipality had imposed an excessive licensing fee for vending machines. See 102 N.J. at 127-28, 130. The Court directed the municipality to "reenact the fee schedule for the regulatory year in question and [to] refund the balance to the claimants." Id. at 131. See also N.J. Builders Ass'n v. Borough of Mendham, 263 N.J. Super. 88, 96 (App. Div. 1993) (finding a municipality's failure "to use a proper method in calculating [a water

connection] fee is neither a waiver nor a forfeiture of its right to collect a reasonable connection fee"). In short, the trial court's remand was in accordance with established authority and we discern no basis for reversing that remand.

In challenging the trial court's remand, plaintiffs make four principal arguments. First, they contend that the trial court erroneously conflated the separate and distinct proofs for liability and damages. We disagree. The trial court made detailed findings concerning the lack of a proper factual basis for the rate increases implemented in the 2010, 2011, and 2012 Ordinances. As already discussed, however, the court also made detailed findings, which are amply supported by the record, that the Utility had costs that may well justify rate increases. Since the court was not provided with evidence that would allow it to calculate those increases, the court was within its authority to remand the matter to the Ridgewood Council for a proper determination of appropriate rates.

Second, plaintiffs contend that our prior decision compelled the trial court to make a calculation of plaintiffs' damages. Not so. The issue before us in our prior decision was whether the trial court had erred in transferring the matter to the BPU. The question whether the matter could be remanded to the Ridgewood Council was not presented or determined by our prior decision. Accordingly, we have not previously determined this issue.

A-0363-17T2

Third, plaintiffs argue that New Jersey law provides that a refund is the appropriate remedy. To support that position, plaintiffs cite to In re Increase in Fees by New Jersey State Board of Dentistry, 84 N.J. 582, 587 (1980); Riker v. Mayor & Aldermen of Jersey City, 38 N.J.L. 225 (Sup. Ct. 1876); and Mayor & Municipal Council of Clifton v. Passaic Valley Water Commission, 115 N.J. 126 (1989). These three cases, however, either support a remand or are distinguishable from the facts at issue here.

Specifically, the decisions in State Board of Dentistry and Riker support the remand and refund ordered by the trial court in this case. In State Board of Dentistry, after this court invalidated a license and registration fee schedule set by the New Jersey State Board of Dentistry, and after that Board calculated a new lawful fee schedule, the Supreme Court ruled that the Board did not have a "right" to keep the excess fees charged. 84 N.J. at 587 (quoting Riker, 38 N.J.L. at 228). Thus, the Court "remand[ed] the case to the State Board of Dentistry for calculation and distribution of the proper refund[.]" Id. at 590.

Similarly, in Riker, the plaintiff sought a refund of the difference between an invalidated sewer assessment and a recalculated assessment. 38 N.J.L. at 225, 227. In Riker, the Court held the plaintiff was entitled to the refund based on the commissioners' recalculated assessment. 38 N.J.L. at 225, 228.

32

Accordingly, both State Board of Dentistry and Riker support the calculation of damages based on the difference between the unlawful rate actually charged and the municipality's recalculated lawful rate based on actual Utility costs.

Next, the facts underlying the Court's decision in Clifton are distinguishable from the instant matter. In Clifton, the Court determined that a multijurisdictional water utility's distribution of funds to its owner-cities was invalid as there was no legislative authorization for such distribution of funds. 115 N.J. at 136, 141, 147. Therefore, the Court ordered the full amounts distributed to be refunded to the water utility, because the utility had no statutory right to make the distributions. 115 N.J. at 141, 145-47. Here, in contrast, the Utility has a statutory right to set rates, see N.J.S.A. 40A:31-10(a), but the trial court determined that the rates set by the Utility were invalid because they were arbitrary, capricious, and unreasonable. Accordingly, a remand is appropriate to allow the Utility to validly exercise its rate-setting authority. Cf. Twp. of Middletown v. Simon, 193 N.J. 228, 251 (2008) (acknowledging "a distinction between an act utterly beyond the jurisdiction of a municipal corporation and the irregular exercise of a basic power under the legislative grant in matters not in themselves jurisdictional" (quoting Middletown Twp. Policemen's

Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 368 (2000))).

Finally, plaintiffs assert that their expert set forth the calculation of damages, which was unchallenged at trial. The specific findings of fact made by the trial court do not support that argument. As previously noted, the trial court rejected plaintiffs' expert's position on damages, a rejection amply supported by substantial, credible evidence.

D.     The Surpluses

The parties make two arguments concerning the surpluses the Utility transferred to Ridgewood. First, plaintiffs argue the trial court erred in failing to award them just over $3.6 million as damages for the alleged improper transfer of surpluses from 2011 to 2016. Second, defendant contends that not only were surplus transfers permitted, but the trial court erred in capping future annual surplus transfers at five percent of the Utility's cost of operation.

Whether Ridgewood is permitted to transfer surpluses from the Utility involves the interpretation of several statutory provisions, specifically, N.J.S.A. 40A:31-10, N.J.S.A. 40A:31-23, and N.J.S.A. 40A:4-35.1. Accordingly, our review of these issues is de novo. Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (first citing McGovern v. Rutgers, 211 N.J.

94, 107-08 (2012); then citing <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011); and then citing <u>State v. Gandhi</u>, 201 N.J. 161, 176 (2010)).

When interpreting a statute, the primary goal is to give effect to the intent of the Legislature. <u>State v. Lenihan</u>, 219 N.J. 251, 262 (2014) (quoting <u>State v. Hudson</u>, 209 N.J. 513, 529 (2012)). "[T]he best indicator of that intent is the plain language chosen by the Legislature." <u>Ibid.</u> (alteration in original) (quoting <u>Gandhi</u>, 201 N.J. at 176). "[W]ords and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." <u>State v. Hupka</u>, 203 N.J. 222, 232 (2010) (quoting N.J.S.A. 1:1-1). "If the statute is clear and unambiguous on its face and admits of only one interpretation, [a court] need delve no deeper than the act's literal terms to divine the Legislature's intent." <u>State v. Butler</u>, 89 N.J. 220, 226 (1982).

The Water Supply Act permits municipalities to establish surpluses for a water utility for anticipated contingencies. N.J.S.A. 40A:31-10(c)(2). It also allows, in certain circumstances, municipalities to transfer some of that surplus to its local budget. <u>Ibid.</u> Specifically, the Water Supply Act states:

35

In fixing rates . . . the local unit . . . [can] . . . [e]stablish a surplus in an amount sufficient to provide for the reasonable anticipation of any contingency that may affect the operation of the utility, and, at the discretion of the local unit or units, allow for the transfer of moneys from the budget for the water supply facilities to the local budget in accordance with [N.J.S.A. 40A:4-35.1].

[N.J.S.A. 40A:31-10(c)(2).]

In turn, N.J.S.A. 40A:4-35.1 provides that a surplus not exceeding five percent of the annual cost of the Utility's operation may be transferred to the municipality when the Utility is "regulated by the [BPU] pursuant to subsection d. of N.J.S.[A.] 40A:31-23[.]"  Subsection (d) of N.J.S.A. 40A:31-23 provides that "a local unit or local units owning and operating water supply facilities . . . which supply water to more than 1,000 billed customers within another local unit, shall be subject to the jurisdiction, regulation and control of the [BPU][.]"

Paragraph (e) of N.J.S.A. 40A:31-23 exempts certain utilities from the BPU's rate-setting jurisdiction.  In that regard, subsection (e) provides that:

[W]henever any supplying local unit or units charge the same rates or rentals to the billed customers outside of the supplying local unit or units as are charged to customers within the supplying local unit or units, the local unit or units owning and operating water supply facilities . . . shall, with respect to the rates or rentals to be charged to users of water supply services, be exempt

from the jurisdiction, regulation and control of the [BPU].

[N.J.S.A. 40A:31-23(e).]

N.J.S.A. 40A:31-23(f) provides that "[n]othing in subsection e. of this section shall be construed to exempt any supplying local unit or units supplying billed customers outside of the supplying local unit or units, from the jurisdiction, regulation and control of the [BPU], with respect to service and reliability."

In applying the language used by the Legislature, these statutory provisions authorize a municipality, such as Ridgewood, to transfer surplus from its utility, but cap the annual transfer at five percent of the utility's costs of operation. First, N.J.S.A. 40A:31-10(c)(2) authorizes a surplus and a transfer of some of that surplus "in accordance with" N.J.S.A. 40A:4-35.1. Second, N.J.S.A. 40A:4-35.1 applies to any municipality supplying a utility service that is regulated by the BPU pursuant to subsection (d) of N.J.S.A. 40A:31-23. Third, N.J.S.A. 40A:31-23(d) gives the BPU jurisdiction over a utility owned by a municipality when that utility "suppl[ies] water to more than 1,000 billed customers within another local unit[.]" Fourth, N.J.S.A. 40A:31-23(e) exempts from the BPU's jurisdiction the "rates" charged by such utilities. Finally,

N.J.S.A. 40A:31-23(f) clarifies that a utility remains subject to the BPU's jurisdiction with regard to "service and reliability."

In summary, while subsection (e) exempts rate setting from the BPU's jurisdiction, subsection (f) clarifies that the BPU retains jurisdiction over such utilities for other purposes. Therefore, N.J.S.A. 40A:4-35.1 applies to the Utility because the Utility is still subject to the BPU's jurisdiction for service and reliability.

Both plaintiffs and Ridgewood argue that N.J.S.A. 40A:4-35.1 does not apply because the Utility's rates are not subject to regulation by the BPU. Plaintiffs then argue that there is no statutory authority permitting a transfer of any surplus. Relying on Clifton, plaintiffs go on to argue that all transfers must be vacated and the monies returned to the Utility. They also assert that the $3,641,649 transferred between 2011 and 2016 should be awarded to them as damages.

Ridgewood also argues that N.J.S.A. 40A:4-35.1 does not apply, asserting that N.J.S.A. 40A:4-35 governs. That statutory section provides:

> If, in any year as a result of the operation of such utility . . . , there shall be a surplus, . . . then such surplus, when authorized by the . . . body controlling

the utility . . . , may be included in the budget as an item of miscellaneous revenue[.]

[N.J.S.A. 40A:4-35.]

We disagree with both parties' positions. As already summarized, N.J.S.A. 40A:4-35.1 applies. The Legislature withdrew the BPU's jurisdiction only over "rates . . . to be charged," but left such utilities subject to the BPU's jurisdiction for other purposes, such as "service and reliability." N.J.S.A. 40A:31-23(e) and -23(f).

Moreover, to accept plaintiffs' argument would ignore N.J.S.A 40A:31-10(c)(2), which expressly authorizes surpluses. Because there is statutory authority for surpluses and the transfer of some portion of the surplus, Clifton does not control. Furthermore, to accept defendant's position would conflict with Clifton, which determined N.J.S.A. 40A:4-35 does not apply to a municipal utility that supplies water to customers outside the municipality. See 115 N.J. at 145.

E.    The Attorney's Fees

Finally, plaintiffs argue that they are entitled to an award of attorney's fees as the prevailing representatives of a class. In that regard, they contend that the litigation resulted in a tangible benefit to all ratepayers because the rate increases in the 2010, 2011, and 2012 Ordinances were invalidated.

Accordingly, plaintiffs requested the trial court to order defendant to pay their attorney's fees through a fund in court in accordance with Rules 4:32-2(h) and 4:42-9(a)(2).

"[T]he prevailing party in litigation generally is not entitled to an award of attorneys' fees." Henderson v. Camden Cty. Mun. Util. Auth., 176 N.J. 554, 564 (2003). There are, however, exceptions to that general rule. "One exception to that rule is that attorneys' fees may be awarded from a 'fund in court.'" Ibid. (quoting R. 4:42-9(a)(2)). Rule 4:32-2(h) states that in an action certified as a class action, an application for attorney's fees may be made in accordance with Rule 4:42-9. Rule 4:42-9, in turn, authorizes attorney's fees in eight instances, including "[o]ut of a fund in court." R. 4:42-9(a)(2). Specifically, the fund-in-court exception states:

> The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury. A fiduciary may make payments on account of fees for legal services rendered out of a fund entrusted to the fiduciary for administration, subject to approval and allowance or to disallowance by the court upon settlement of the account.
>
> [R. 4:42-9(a)(2).]

The fund-in-court exception applies to "situations in which equitably allowances should be made and can be made consistently with the policy of the

rule that each litigant shall bear his [or her] own costs." Sunset Beach Amusement Co. v. Belk, 33 N.J. 162, 168 (1960). Such a situation exists "when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation," making it "unfair to saddle the full cost" of the litigation upon the plaintiff. Henderson, 176 N.J. at 564 (first citing Silverstein v. Shadow Lawn Sav. & Loan Ass'n, 51 N.J. 30, 45 (1968); then quoting Sunset Beach Amusement Co., 33 N.J. at 168).

Whether the fund-in-court exception applies requires a two-step analysis. Porreca v. City of Millville, 419 N.J. Super. 212, 227-28 (App. Div. 2011). "First, the court must determine as a matter of law whether plaintiff is entitled to seek an attorney fee award under the fund in court exception as articulated in Henderson." Id. at 228. Second, if the court determines the plaintiff has met the threshold, the court has discretion to make an award by considering "the totality of the facts of the case." Ibid. We have explained that

> [t]he critical question in considering plaintiff's entitlement to request attorney's fees under this Rule is whether a fund in court was created as a result of [plaintiff's] litigation. There need not be recovery of a lump sum fund of money; it is sufficient if the fund is the subject matter of the litigation and is thus brought under the control of the court.
>
> [Ibid.]

Here, the trial court denied plaintiffs an award of attorney's fees. In making that ruling, the trial court found that the circumstances of this matter did not dictate the equitable allowance of attorney's fees. The trial court explained that all ratepayers had an interest in correctly delineating water usage rates and the circumstances of this case did not warrant an award of attorney's fees to the plaintiffs.

We discern no error in the trial court's decision not to award attorney's fees. The trial court correctly recognized that plaintiffs had a legal basis for an award of attorney's fees under the fund-in-court exception in Rule 4:42-9(a)(2). The trial court, however, exercised its discretion and denied an award of attorney's fees given the circumstances of this case. In particular, we note that the ratepayers in Wyckoff, Glen Rock, and Midland Park effectively did participate in the litigation through their municipalities because those municipalities used public funds to pay their attorney's fees.

Having reviewed all the arguments put forward on the appeal and cross-appeal, we have rejected each of those arguments. To the extent that we did not address specific sub-arguments, it is because we deem such arguments as not warranting a discussion in a written opinion. See Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

42

A-0363-17T2