# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0028-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.L.A.,

     Defendant-Appellant.

_____

Argued November 10, 2020 – Decided February 24, 2021

Before Judges Fisher, Gilson[1] and Moynihan (Judge Fisher dissenting).

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-01-0157.

Alison Gifford, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Gifford, of counsel and on the brief).

_____

[1] Judge Gilson did not participate in oral argument. The parties consented to his participation in this decision without the need for further oral argument.

Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

A jury acquitted defendant A.L.A.[2] of three counts of second-degree endangering the welfare of three of her grandchildren for whom she cared,[3] N.J.S.A. 2C:24-4(a)(2), and acquitted her of the lesser-included offense of simple assault, N.J.S.A. 2C:12-1(a)(1), in connection with two of those counts. She appeals her conviction on one count of simple assault, as a lesser-included offense, for hitting her youngest grandchild with a belt twelve times, arguing:

> [A.L.A.]'S CONVICTION MUST BE REVERSED BECAUSE THE SIMPLE ASSAULT CHARGE FAILED TO INSTRUCT THE JURY THAT NOT ALL CORPORAL PUNISHMENT IS SIMPLE ASSAULT.

We discern no reversible error in the instruction that was given and affirm.

After the oldest grandchild reported she ran away because defendant abused her grandchildren, the Division of Child Protection and Permanency

---

[2] Initials are used to protect the privacy of the victims. See generally N.J.S.A. 2A:82-46; R. 1:38-3(c)(9).

[3] Defendant was also charged with endangering a fourth grandchild in her care, but the trial judge granted her motion for judgment of acquittal on that count. The trial judge had previously granted the State's motion to dismiss other counts for aggravated assault and weapons offenses.

began an investigation during which a Division investigator obtained an audio recording from the oldest grandchild that led to the emergency removal of the children from defendant's care. See N.J.S.A. 9:6-8.29. The twenty-seven-second recording, purportedly capturing the youngest grandchild's reaction as defendant hit her with a belt, was played for the jury; we quote the record: "Crying, indiscernible, crying, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, ow smack, indiscernible[.]"

During the charge conference, the trial judge reviewed the written charge he had distributed to counsel the day before and confirmed he would add the lesser-included offense of simple assault to each of the three remaining endangering counts. When the judge asked for comment, defendant's counsel contended that if the simple assault instruction was read "without a caveat, every spanking is a simple assault," specifying, "[t]he caveat should be that corporal punishment is recognized by the law as a valid means of disciplining a child."

When the trial judge responded that defendant's counsel had "requested simple assault yesterday," counsel agreed they had discussed the lesser charge, but was "requesting it now but with the caveat that not every corporal punishment, spanking is a simple assault that the law recognizes."

A-0028-18

When asked for his input, the assistant prosecutor recounted an in-chambers discussion about "including within the endangering charge a definition of simple assault taking the language from" Department of Children and Families, Division of Youth and Family Services v. K.A., 413 N.J. Super. 504 (App. Div. 2010), quoting State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002). The assistant prosecutor specified the language of the jury charge

> this court has approved . . . to be used in a trial where [a violation of N.J.S.A. 2C:24-4(a)] is submitted to the jury for its determination: "The law does not prohibit the use of corporal punishment. The statute prohibits the infliction of excessive corporal punishment. The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case."
>
> [K.A., 413 N.J. Super. at 510 (quoting T.C., 347 N.J. Super. at 239-40).]

The assistant prosecutor reiterated the State's reservation about modifying the model jury charges, but said "it seems like a fairly safe instruction . . . to include . . . in the endangering paragraph under the definitions where abuse and neglect is defined using the model language from the charge and then putting [in] another short paragraph using those two or possibly three sentences."

The trial judge responded that that was "exactly what [he had] said" the day prior. The judge then delineated the change he planned to make only to all

three counts of the endangering charge, specifying the page and paragraph of the instruction defining an abused or neglected child to which he would add the three-sentence instruction from K.A.

The judge charged the jury according to that delineation.  He did not add the K.A. language to the simple assault instruction, prompting defendant's counsel's sidebar request at the end of the charge:  "The only thing I would . . . add, [j]udge, is that under the lesser includeds, simple assault . . . spanking is not a simple assault if it arises during reasonable corporal punishment of a child."  The following colloquy ensued:

> [PROSECUTOR]:  It's reasonably entrenched in the other part of that instruction.
>
> [DEFENDANT'S COUNSEL]:  Yeah, but that's the problem it's in the other part, it's not under the lesser[-]included part.
>
> THE COURT:  I'm not . . . going to change the charge now.
>
> [DEFENDANT'S COUNSEL]:  Okay.
>
> THE COURT:  Then we should have done that before. We'll just leave it as it is. Okay.
>
> [PROSECUTOR]:  Thank you, [j]udge.

The issue was not further discussed.

Defendant now argues the trial judge's simple-assault instruction "was not sufficiently tailored to the material facts of the case." She claims "in cases where simple assault is presented to the jury as a lesser-included or related offense to an endangering charge that is based on allegations of corporal punishment, the simple assault instruction must be tailored to reflect that some degree of corporal punishment is allowed," and that "counsel properly asked the court to clarify that 'not every corporal punishment . . . is a simple assault' and 'spanking is not a simple assault if it arises during reasonable corporal punishment of a child.'"

We first note that defendant's counsel did not request the latter portion of that proposed charge during the charge conference; it was asserted after the trial judge completed his charge. And the former portion of the charge does not track the K.A. language. Moreover, it was not adopted as part of the final charge the trial judge carefully explained during the charge conference. The judge agreed to add the K.A. language only to the endangering charge.

Although defendant argues in her merits brief that "the parties appeared to agree that the language from K.A. would be used to qualify both the endangering and the simple assault charges," the record does not establish that agreement. The judge specified the portions of the endangering charge to which he was adding the K.A. language. During closing argument, defendant's counsel

did not mention the simple assault charge, and did not argue defendant was not guilty of simple assault because defendant's actions were an acceptable form of corporal punishment; the focus of that closing was the endangering charge. The summation did not evidence defendant's reliance on any agreement that the simple assault instruction would include additional language, whether from K.A. or that proposed by defendant's counsel during the charge conference. Further, the State's summation did not attempt to negate the elements necessary to establish simple assault, mere bodily injury or pain, see N.J.S.A. 2C:12-1(a)(1), by any reference to corporal punishment.

We do observe that the assistant prosecutor, after recounting the in-chambers discussion about adding the K.A. language to the endangering charge, added: "And that would seem to address the concerns . . . that the defense has about the jury automatically reaching the conclusion that every time you employ corporal punishment with a child it would be viewed as simple assault." This colloquy ensued:

> THE COURT: Right. Well - -
>
> [PROSECUTOR]: So that would be the State's . . . recommendation and again, using those three sentences already in the case.
>
> THE COURT: Okay. Any objection to that?

7

[DEFENDANT'S COUNSEL]: No objection.

It is clear, however, the trial judge agreed to add just the K.A. language, not that now advanced by defendant. And whether or not there was an agreement, we do not see that the trial judge's omission of the K.A. language from the simple assault instruction warrants reversal because "[w]e will disregard '[a]ny error or omission [by the trial court] . . . unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Castagna, 187 N.J. 293, 312 (2006) (second, third and fourth alterations in original) (quoting R. 2:10-2). "[T]he same ultimate standard applies whether the error was objected to below or whether the error was first claimed upon appeal." State v. Macon, 57 N.J. 325, 337-38 (1971); see also Castagna, 187 N.J. at 312.

The K.A. language was applied to child endangerment cases because it addresses the provisions of the applicable statutes. As we noted in T.C., the endangering statute, N.J.S.A. 2C: 24-4(a),

> employs broad, general terminology in describing the offense of endangering the welfare of children. As applied here, it refers to causing a child "harm that would make the child an abused or neglected child as defined in" N.J.S.A. 9:6-1, N.J.S.A. 9:6-3, and N.J.S.A. 9:6-8.21. Thus, to give further content to N.J.S.A. 2C:24-4a, one must obviously look at the cited provisions of Title [Nine].

A-0028-18

[347 N.J. Super. at 239.]

Pertinent to the facts of this case, as charged by the trial judge, an abused or neglected child is one

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The trial judge inserted the K.A. language after the paragraph of the model charge that quotes that statutory definition.

That language, obviously, was never made part of the model charge. See Model Jury Charges (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Second Degree) (N.J.S.A. 2C:24-4(a)(2))" (rev. March 9, 2015). We did not request that it be considered for addition. In fact, our decision in K.A. should have denoted any perceived approval of that language in T.C. was tacit. We did not specifically address that language; we merely recited it as part of the charge given by that trial court, and noted there was "no claim that the court misstated the law." T.C., 347 N.J. Super. at 240.

In any event, no court has extended the use of that language outside of cases specifically involving Title Nine, see K.A., 413 N.J. Super. at 510; N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 31 (2011), or those in which Title Nine terms are incorporated into criminal charges, see T.C., 347 N.J. Super. at 239-40.

As the Court recognized in P.W.R.:  "Abuse and neglect actions are controlled by the standards set forth in Title Nine of the New Jersey Statutes[,]" the purpose of which "'is to provide for the protection of children under [eighteen] years of age who have had serious injury inflicted upon them.'" 205 N.J. at 31 (quoting N.J.S.A. 9:6-8.8).  To find a child is abused or neglected requires more than just a simple assault.  See N.J.S.A. 9:6-8.21(c)(4).  As defendant's counsel argued in summation, not only must the corporal punishment be excessive, but the State is also required to prove the child's "physical, mental or emotional condition has been impaired or [was] in imminent danger of becoming impaired."  See ibid.

By contrast, the Legislature did not graft any Title Nine provision to the simple assault statute which requires the State to prove an "attempt[] to cause or purpose[ful], knowing[] or reckless[] caus[ation] [of] bodily injury," N.J.S.A. 2C:12-1(a)(1); bodily injury is defined as "physical pain, illness or any

impairment of the physical condition," N.J.S.A. 2C:11-1(a).  When interpreting statutes, "[o]ur task . . . is to determine and effectuate the Legislature's intent." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009).  "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005).  Thus we begin our review with the "plain language of the statute," Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008), crediting "the statutory words their ordinary meaning and significance," DiProspero, 183 N.J. at 492.  "We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit."  Tumpson v. Farina, 218 N.J. 450, 467-68 (2014).  Only "if a plain reading of the statutory language is ambiguous, suggesting 'more than one plausible interpretation,' or leads to an absurd result, then we may look to extrinsic evidence."  Id. at 468 (quoting DiProspero, 183 N.J. at 492).  "If the plain language chosen by the Legislature 'leads to a clearly understood result' . . . we apply the law as written."  State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)).

The plain language of the simple-assault statute is not ambiguous; it neither expressly nor impliedly signals the Legislature's intent to exempt the

A-0028-18

infliction of corporal punishment from the disorderly persons offense. "[W]ords chosen by the Legislature are deemed to have been chosen for a reason." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 307 (1993). "Under the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." Id. at 308. We also recognize that when interpreting statutes there is the presumption "that the legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes." Brewer v. Porch, 53 NJ 167, 174 (1969). We will not, therefore, construe the simple assault statute to include an exception that the Legislature chose to exclude, while including it in the entirely separate child endangerment statute.

Consequently, contrary to defendant's contention, the trial judge did not "sen[d] the jury to deliberate under an incorrect legal framework." The simple assault instruction, as given, was not "of such a nature as to have been clearly capable of producing an unjust result." Castagna, 187 N.J. at 312 (quoting R. 2:10-2).

In short, the court properly instructed the jury on the elements of simple assault and explained to the jury that it had to evaluate the evidence presented at trial and find beyond a reasonable doubt that defendant committed an assault.

12

The evidence in this case showed that defendant hit a child twelve times with a belt while the child cried in apparent pain throughout that ordeal. That evidence supports a conviction of simple assault and we discern no error in the instructions warranting a reversal of the jury's verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

_____

**FISHER, P.J.A.D., dissenting.**

Defendant was accused of abusing her three children. The six charges presented to the jury consisted of three counts of child endangerment, N.J.S.A. 2C:24-4(a)(2) – one count as to each child – and the three lesser-related offenses of simple assault, N.J.S.A. 2C:12-1(a)(1), also one as to each child. The jury acquitted defendant of all charges as to two children, acquitted defendant of child endangerment as to the third child but convicted defendant of simple assault as to the third. In her appeal, defendant argues only that this conviction "must be reversed because the simple assault charge failed to instruct the jury that not all corporal punishment is simple assault." I agree with defendant's position and, for that reason, respectfully dissent from my colleagues' opposite view.

As my colleagues have described, the judge delineated for the jury the elements of child endangerment, and pointed out that the endangerment statute does not criminalize a parent's corporal punishment of a child unless the punishment was excessive:

> The second element that the State must prove beyond a reasonable doubt is that defendant knowingly caused the child harm that would make the child abused or neglected. An abused or neglected child means a child whose physical condition has been impaired or is in imminent danger of becoming impaired as a result of

the failure of the defendant to exercise a minimum degree of care in providing a child with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm or substantial risk thereof including the infliction of excessive corporal punishment or by any other acts of similar serious nature requiring the aid of the [c]ourt.

The law does not prohibit the use of corporal punishment. The statute provides – the statute – let me read that again. The law does not prohibit the use of corporal punishment. The statute prohibits the infliction of excessive corporal punishment. The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case.

[Emphasis added.]

In later instructing the jury on simple assault, the judge did not include a similar limitation about a parent's corporal punishment of a child even though this charge – deemed a lesser-included offense – was based on the same alleged conduct. Instead, the judge instructed the jury that to convict defendant of simple assault

the State must prove the following elements beyond a reasonable doubt: (1) That the defendant did cause bodily injury to [the child] and (2) the defendant acted purposely or knowingly or recklessly in causing bodily injury to [the child].

In short, this part of the charge contained no instructions about the relevance of a parent's corporal punishment of a child. The absence of such an instruction

2                                                                        A-0028-18

necessarily conveyed to the jury that it could convict defendant of simple assault if the two elements quoted above were found beyond a reasonable doubt, and that it didn't matter if defendant engaged only in non-excessive corporal punishment.

Immediately after the judge completed his charge, as the jury remained in the courtroom, defense counsel made the following request at sidebar:

> [DEFENSE COUNSEL]:  The only thing I would – I would add, Judge, is that under the lesser includeds [sic], simple assault . . . spanking is not a simple assault if it arises during reasonable corporal punishment of a child.

The prosecutor asserted that "[i]t's reasonably entrenched in the other part of that instruction," but defense counsel responded, "Yeah, but that's the problem it's in the other part, it's not under the lesser included part."  Without further discussion, the trial judge stated:

> I'm not – I'm not going to change the charge now. . . . [W]e should have done that before.  We'll just leave it as it is.

As can be seen, the State had no substantive objection to what defense counsel requested; the prosecutor merely stated his belief that the exception from criminal liability under a simple assault theory for "reasonable corporal punishment of a child" had already been expressed, that it was "entrenched" in

3

the child endangerment portion of the charge, and that was sufficient. The judge also gave no substantive reason for refusing the requested instruction besides viewing defense counsel's request as untimely: "we should have done that before." For that reason alone, the judge decided he would "just leave it as it is."

Coming as it did immediately upon the judge's completion of the jury charge, defense counsel's request was timely. So, there are only two questions to consider.

First, would the jury have understood from the charge – taken as a whole, State v. Hale, 45 N.J. 255, 264 (1965) – that the instruction about "reasonable corporal punishment" as an exception to criminal liability under the child endangerment statute also applied to the simple assault charge? I don't see how we can assume that. The jury charge carefully divided these concepts. The child endangerment elements were properly given first and it was there that the judge explained a jury could acquit defendant of child endangerment if she only engaged in reasonable corporal punishment. After that, the judge explained what was meant, in general, by a lesser-included offense and then told the jury about the elements of simple assault. He never expressed that a parent's reasonable corporal punishment of a child would also preclude a guilty verdict

4

on simple assault. There is nothing about the language of the charge – either parsed or on the whole – that would have remotely suggested to the jury that it could transplant this aspect of the child endangerment instructions into the simple assault instructions.

Since the simple assault charge did not include an exception from culpability for a parent engaging in reasonable corporal punishment of a child, and since defense counsel timely objected to its absence, we must consider a second and more important question: was the judge required to include that exception within his charge on simple assault? My colleagues have concluded that the judge's failure to limit the reach of the simple assault charge, in light of the circumstances, was neither erroneous nor capable of producing an unjust result. Indeed, my colleagues believe that non-excessive corporal punishment inflicted by a parent on a child is not a defense to the simple assault of a child. I respectfully disagree.

To be sure, as the majority observes, the simple assault statute does not incorporate qualifying language as does the child endangerment statute. But we expect too much to look for such precision. Hardly a day goes by without the commission in this State of assaults on football fields, soccer pitches and hockey rinks, where participants purposely or knowingly or recklessly cause bodily

5

injury to other players. No one would seriously argue that deliberate physical contact during a sporting contest is something the Legislature intended to criminalize. Yet, N.J.S.A. 2C:12-1 does not expressly exclude such assaults from its reach. Does that mean the Legislature intended to criminalize those assaults? No. That's because the Legislature could not foresee every conceivable attempt by a prosecutor to criminalize what should not be criminalized, and undoubtedly left it for trial judges to sort out such matters with common sense and according to the particular circumstances presented. See, e.g., State v. Lashinsky, 81 N.J. 1, 14 (1979) (recognizing that, in some circumstances, a court must "balanc[e] . . . competing values . . . to assess the reasonableness" of applying a criminal statute; in this case, the Court considered whether a news reporter could be convicted of obstructing an officer at the scene of motor vehicle accident).[1] Whether it is a New York Giants defensive end charged with assault for having sacked and injured a visiting team's quarterback, or a parent charged with assault for disciplining a child, the Legislature must

---

[1] It may be that the exception for the disciplining of a child from the reach of the simple assault statute may be found in N.J.S.A. 2C:3-8, which states that the use of force is justified "where the actor has been vested or entrusted with special responsibility for the care, supervision, discipline or safety of another . . . and the force is used for the purpose of and . . . to the extent necessary to further that responsibility . . . ."

have anticipated – despite the lack of express limitations in the assault statute – that trial judges would explain how the statute applies in light of the peculiar factual circumstances in which it occurred.

I also disagree with the majority's determination that the absence of such an instruction was incapable of producing an unjust result. Because we cannot inquire, courts must necessarily engage in educated speculation about what a jury might have thought when rendering a verdict. To assist us in these intellectual gymnastics, we are aided by the admonition that we must assume the jury followed the judge's instructions. See State v. Loftin, 146 N.J. 295, 390 (1996). So, we must assume that in finding defendant guilty of simple assault, the jury followed the instructions that it could convict if the two elements of simple assault were found beyond a reasonable doubt, and we assume too much if we assume the jury rejected the possibility that defendant was disciplining the child in a non-excessive way, because it was not told that this circumstance mattered or could be considered.

The verdict also suggests that the jury was influenced by the absence of the qualifying language that it could acquit if it found defendant only inflicted reasonable corporal punishment on the child. It takes no great leap of faith to assume that the jury acquitted defendant of child endangerment because it

believed she was disciplining the child but not excessively; indeed, that was defendant's theory. Similarly, the conviction for simple assault seems to me to be a product of the jury not understanding – because it was not told – that the infliction of bodily harm could not constitute simple assault if the conduct charged constituted only reasonable corporal punishment.

I think in this case it is highly likely that, after acquitting defendant of endangering this one child, it convicted her of simple assault for engaging in that exact same conduct because it was not told it could acquit if it believed defendant was merely spanking the child. I'm satisfied the content of the jury charge was capable of producing an unjust result.

For these reasons, I respectfully dissent from the court's judgment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0028-18