**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2163-23

MICHAEL R. PATIERNO and
DEBBIE C. PATIERNO,

    Plaintiffs-Appellants,

v.

KHALID AHMED and
MASOODAH AHMED,

    Defendants-Respondents.

_____

Argued March 25, 2025 – Decided April 24, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000117-21.

Robert L. Grundlock, Jr., argued the cause for appellants (Rubin Ehrlich Buckley & Przekop, PC, attorneys; Robert L. Grundlock, Jr., on the briefs).

Rosa L. Mazza-Hilway argued the cause for respondents (Meyner and Landis, LLP, attorneys; Albert I. Telsey and Rosa L. Mazza-Hilway, on the brief).

PER CURIAM

This appeal raises issues under N.J.S.A. 2A: 28-1 to -4, which provides for the resolution of disputes between adjoining landowners by the appointment of Boundary Commissioners. After the Law Division appointed commissioners, they issued a report making recommendations concerning the parties' boundary dispute. Plaintiffs Michael and Debbie Patierno objected, and the Law Division ordered a summary trial. Plaintiffs now appeal from the final Law Division order adopting the report. We affirm.

I.

The Patiernos have lived at 50 Taylortown Road in Montville since 1994. In anticipation of their purchase, the Patiernos retained the services of Donald P. Sweeney & Associates, which prepared and issued a survey ("1994 Survey").

Since 2005, defendants Khalid and Masoodah Ahmed have lived at 52 Taylortown Road. In anticipation of their purchase, the Ahmeds retained the services of a different surveyor, G.L. Worley & Associates, LLC ("2005 Survey").

The properties are adjacent to each other, with the Ahmeds' property to the north. In 2018, a property boundary line dispute arose between the Patiernos and the Ahmeds over the removal of dead trees. A comparison of the 1994 and

2

2005 survey maps revealed a discrepancy in the placement of the boundary markers for each property. The discrepancy measured 4.5-feet along the front of the two properties and 1.7-feet along the rear of the properties.

The properties were created pursuant by a 1956 subdivision described on an unrecorded minor subdivision map captioned "Sketch Plat for Proposed Lot Layout for 26 Montville Realty" prepared by Newell C Harrison of Tri-County Engineers and Surveyors (the "1956 Subdivision"). The 1956 Subdivision consisted of four properties: (i) the Patierno Property (Lot Eleven), (ii) the Ahmed Property (Lot Ten), and (iii) Lots Nine and Twelve.

After an unsuccessful attempt at mediation, the Patiernos filed a complaint to appoint Boundary Commissioners pursuant to N.J.S.A. 2A:28-l, certifying that they knew of no other parties that should join the litigation. The Ahmeds did not oppose, and the court appointed three commissioners who were tasked with issuing a Boundary Commissioner's report. The report's objective was to determine the true boundary line between the properties. The three commissioners were two attorneys and Richard Smith, a licensed surveyor.

Over a nine-month period the commissioners reviewed deeds, surveys, and plats. They also surveyed both properties and surrounding properties before issuing their report. The report found no conflict between the legal descriptions,

3

but it noted disagreement on where to place the boundary markers on the ground. The commissioners determined the 2005 Survey properly identified the true location of the Disputed Boundary Line, and the 1994 Survey did not.

After receiving the report, the Patiernos objected and petitioned the Law Division to set aside the report pursuant to N.J.S.A. 2A:28-3. The court scheduled a summary proceeding, which took place in November 2023. Three witnesses testified on behalf of the plaintiff: Keith Ludwig, Thomas Stearns, and Michael Patierno. Smith and Khalid Ahmed testified on behalf of the defense.

None of the plaintiffs' witnesses challenged the boundary commissioner's determination of the true boundary line. Rather, Ludwig, who was a professional land surveyor, proposed a new property line, essentially splitting the difference between the 1994 and 2005 lines. Stearns testified that he had previously completed a survey of Lot Twelve, a neighboring lot, and that his survey differed from that of the commissioners. He further testified that he did not determine that the commissioner's conclusion was wrong and his was right, only that it was different. Both parties testified as to their dispute with each other over trees on the property. Last, Smith testified to the methods and

procedures used by the commissioners and explained how they determined that the 2005 Survey was where the true property line laid.

At the conclusion of trial, the court ordered that notice be given to both owners of Lot Nine and Twelve as possible indispensable parties. In January 2024, the owners of Lot Nine and Twelve informed the court that they did not wish to be involved in the proceeding. On February 8, 2024, the court adopted the commissioner's report, dismissed the Patierno's objections, and declined to adopt the compromise boundary line proposed by Ludwig.

This appeal follows.

II.

We apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 594 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). In an appeal from a non-jury trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). Deference is given to credibility findings. State v. Hubbard, 222 N.J. 249, 264 (2015). "Appellate courts owe deference to the trial court's credibility determinations as well because it has 'a better perspective than a reviewing court

in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

In contrast, we review matters of statutory interpretation de novo. Moschella v. Hackensack Meridian Jersey Shore Univ. Med. Ctr., 258 N.J. 110, 125 (2024). We apply well-established principles when engaging in statutory interpretation. "The overriding goal" of statutory interpretation "is to determine . . . the intent of the Legislature, and to give effect to that intent." State v. Hudson, 209 N.J. 513, 529 (2012). We begin with the understanding "the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." Ibid. "Where the plain language of a statute is clear, we enforce the statute as written." Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

Moreover, "[i]f the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources." Hudson, 209 N.J. at 529. "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question; however, when the statutory language results in more than one reasonable interpretation, then resort may be had to other construction tools . . . in the analysis." Id. at

6

529-30 (citing State v. Shelley, 205 N.J. 320, 323-24 (2011)). These may "includ[e] legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

III.

Plaintiffs' arguments fall into three categories: the Commissioners' report is improper because it impacts property of those not party to the litigation who were not properly noticed; the court failed to consider alternative resolutions; and the report is inaccurate because it relies on circumstantial evidence.

Plaintiff's first argument, that the court's ruling adopting the report improperly shifts the boundary lines of property owners not party to the litigation who did not receive notice is belied by the record. Plaintiffs certified that they knew of no other parties to be included in this litigation when they filed suit. After the court obtained the commissioner's final report, it ordered plaintiffs to give the other neighboring landowners notice of the litigation. The other landowners elected not to participate.

In addition, our review of the complaint shows that the Patiernos chose to file this action under the Boundary Commissioner statute. This law "only considers an action to resolve the disputed boundary line between two

7

neighboring properties" and does not contemplate a reorganization of an entire neighborhood. N.J.S.A. 2A:28-2. When we consider the statute and the record before the trial court, we conclude that the commissioners focused on the boundary dispute between the parties. We note that the plain language of the court's final order states that it pertains only to the boundary line between the Patiernos and the Ahmeds, and we discern no error.

The Patiernos next claim that any adjustment in the disputed boundary line between their lot and the Ahmed's lot must be accompanied by an equal adjustment in the boundary lines of the adjacent properties. They argue that the preferred solution, according to the commissioners, is to change the boundaries of an additional four lots. They contend that this recommendation exceeded the scope of the issue before them and therefore issued an ultra vires report. See Generally City Council of Orange v. Edwards, 455 NJ Super. 261, 270-71 (App. Div. 2018). We are unconvinced, as we conclude this argument is based on plaintiffs' misreading of the commissioner's report and the trial court's final order. The court correctly analyzed the report as well as the underlying statutory authority and determined the report neither necessitated nor had the authority to impact adjoining lots. As such, the report is only "final" as to the parties to the lawsuit and only implicates the Patierno and Ahmed properties.

8

Next, plaintiffs contend under N.J.S.A. 2A:28-3, the trial court has authority to set the commissioner's report aside, resolve the dispute between the parties, or join other affected parties who could from the beginning participate in a new process. We disagree.

The plaintiffs filed suit in order to appoint commissioners so as to ascertain the true location of the disputed property line. The court is limited by the statute to "set aside the report," after which "the issue shall be tried and determined as in other cases of a civil nature at law, in said court." N.J.S.A. 2A:28-3. The plain language of the statute reveals no authority which would permit courts to draw a boundary line which directly contravenes the findings set forth in the Boundary Commissioners' Report. The record shows that the Ludwig Survey was neither the product of reliable surveying methods nor was it prepared to ascertain the true boundary line, and we conclude the court did not abuse its discretion in not considering it. As the Patiernos failed to show that the commissioner's boundary determination was flawed, the court properly declined to set it aside.

Finally, plaintiffs' argument that the report relied on circumstantial evidence and is therefore inaccurate is without merit. The Commissioners undertook an extensive review of the history of the properties and opined that

9

the 2005 Survey accurately delineated the proper boundary line. At the summary proceeding, plaintiffs failed to show any deficiencies within the commissioners' report. The court properly rejected plaintiffs' challenge to the report and its conclusions, given the commissioners' and plaintiff's failure to establish any defect in the report or accompanying surveys.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division